## 1284

Clarence ANDREWS, Appellant v. PIEDMONT AIR LINES, Respondent.

(377 S. E. (2d) 127)

Court of Appeals

*William M. Gordon* and *Barney O. Smith, Parham & Smith*, Greenville, *for appellant.*

*J. Brantley Phillips* and *Samuel W. Outten, Leatherwood, Walker, Todd & Mann*, Greenville, *for respondent.*

Heard Dec. 12, 1988.

Decided Feb. 6, 1989.

*Per Curiam:*

This is an action for intentional infliction of emotional distress, false imprisonment, and negligence. Clarence Andrews sued Piedmont Air Lines for an incident which occurred after Piedmont denied him boarding on a flight due to his physical incapacity to travel unaccompanied. The circuit court granted Piedmont's motion for summary judgment. Andrews appeals. We affirm.

In 1984, Andrews, a diabetic who had previously suffered a stroke, was admitted to Greenville Memorial Hospital for circulatory problems in his right leg. As a result of the stroke, his speech was slurred, he drooled, and his left side was paralyzed. Unfortunately, the treatment for his leg was unsuccessful and it had to be amputated above the knee. During the recovery period, the hospital contacted Andrews' daughter in Florida and asked if her father could live with her. She agreed and the hospital arranged the trip.

A hospital social worker, Andrew Irwin, telephoned Piedmont and reserved a seat for Andrews. Piedmont informed

Irwin that the airline had guidelines governing travel by unaccompanied physically handicapped passengers. Under the guidelines, Piedmont would accept the passenger if he (1) could use the lavatory without assistance, (2) was able to sit in a normal sitting position with the seatbelt properly fastened, and (3) required no assistance eating.

In December 1984, the hospital discharged Andrews and took him by ambulance to the Greenville/Spartanburg Airport. He was placed in an airport wheelchair and taken to the Piedmont ticket counter. He purchased a ticket and was wheeled to the gate area to wait for his flight. While waiting to embark, Andrews asked other passengers for cigarettes and asked a passenger to tie his leg to the wheelchair. The supervisor of airport security notified Milton Ward, the Piedmont station manager, of a potential problem at the departure gate.

When Ward arrived at the gate, he found Andrews slumped over in the wheelchair with saliva drooling out of the side of his mouth. Ward questioned Andrews about his ability to go to the bathroom by himself. He received a negative answer. Since Andrews did not meet Piedmont's guidelines, Ward kept him off the flight. Andrews was removed from the passenger waiting area to an area adjacent to the Piedmont office and ticket counter. Piedmont telephoned the hospital to come get Andrews.

Upon receipt of Piedmont's call, Irwin went to the airport and found Andrews in a wheelchair. He called the hospital requesting an ambulance and remained with Andrews, one and a half to two hours, until it arrived. Andrews returned to the hospital and alternate travel plans were arranged.

## I.

We first address the action for negligence. To recover for negligence Andrews must show (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach. *South Carolina Insurance Company v. James C. Greene & Co.*, 290 S. C. 171, 348 S. E. (2d) 617 (Ct. App. 1986). The absence of any one of these elements renders the cause of action insufficient. *South Carolina State Ports*

*Authority v. Booz-Allen & Hamilton,* 289 S. C. 373, 346 S. E. (2d) 324 (1986).

Andrews does not contest Piedmont's refusal to board him. He complains of his treatment after he left the boarding gate. Assuming Piedmont breached a duty of care by leaving him alone in the area adjacent to the ticket counter, Andrews still has not shown damages resulting from the breach.

On appeal, Andrews asserts that Piedmont's negligent conduct caused him to suffer damages in the form of expenditures for lodging at the hospital and emotional discomfort to him and his family. These claims will not support an action for negligence. The additional hospital stay was required because Andrews had no place to go after Piedmont refused to let him board. These costs would have been incurred regardless of Piedmont's conduct after Andrews left the boarding gate. Thus, they are not damages proximately caused by the actions complained of. Mere emotional discomfort is not an actionable damage, even if it results from the defendant's lack of due care. *See Dooley v. Richland Memorial Hospital,* 283 S. C. 372, 322 S. E. (2d) 669 (1984).

Viewing the evidence in a light most favorable to Andrews, he has failed to allege any damages. The absence of damage proximately resulting from the alleged breach renders his cause of action insufficient.

## II.

Next, Andrews alleges Piedmont's actions were so extreme and outrageous as to support a cause of action for intentional infliction of emotional distress, i.e., the tort of outrage. To state a claim for outrage, the plaintiff must allege: (1) conduct by the defendant which is atrocious, utterly intolerable in a civilized community, and so extreme and outrageous as to exceed all possible bounds of decency; (2) the defendant acted with intent to inflict emotional distress or acted recklessly when it was certain or substantially certain such distress would result from his conduct; (3) the actions of the defendant caused the plaintiff to suffer emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable

man could be expected to endure it. *Corder v. Champion Road Machinery International Corp.*, 283 S. C. 520, 324 S. E. (2d) 79 (Ct. App. 1984).

The question of whether a defendant's conduct may be reasonably regarded as so extreme and outrageous as to allow recovery is a question for the court to determine in the first instance. *Butts v. AVX Corp.*, 292 S. C. 256, 355 S. E. (2d) 876 (Ct. App. 1987).

In this case, Andrews alleges Piedmont's acts after he was denied boarding constituted outrageous conduct. Piedmont removed him from the departure gate and placed him in an area near the ticket counter. He complains that he was left in a baggage area, unattended and apparently forgotten. However, his only recollection of these events was being in an area with baggage near a duffel bag and requesting a woman to call Irwin, his hospital social worker. He remembered nothing else about the incident. Piedmont explained that the waiting area is where unaccompanied minors wait for their guardians. Uncontradicted testimony shows that Andrews remained in the Piedmont area, that the hospital was called to come get Andrews, that he was offered something to drink, and that Piedmont's employees occasionally checked on him.

On the record before us, Piedmont's actions were reasonable and will not support a cause of action for outrage. Even if Andrews could show that his weakened physical and mental condition made Piedmont's actions unreasonable, the acts do not rise to a level of extreme and outrageous conduct. The circuit court correctly granted summary judgment on the cause of action for outrage.

### III.

Finally, Andrews alleges that Piedmont's conduct supports a cause of action for false imprisonment. False imprisonment is depriving the plaintiff of his liberty without lawful justification. *Thomas v. Colonial Stores, Inc.*, 236 S. C. 95, 113 S. E. (2d) 337 (1960); *Strong v. City of Milwaukee*, 38 Wis. (2d) 564, 157 N. W. (2d) 619 (1968). In order to establish a cause of action, the evidence must prove: (1) that the defendant restrained the plaintiff; (2) that the restraint was intentional; and (3) that the re-

straint was unlawful. *See id.*

   The facts of this case do not support a cause of action ▉▉ for false imprisonment. Assuming Piedmont restrained Andrews, there is no evidence that the restraint was unlawful. Common carriers have a higher duty of care towards noticeably handicapped passengers. *See Singletary v. Atlantic Coast Line Railroad Co.*, 217 S. C. 212, 60 S. E. (2d) 305 (1950). Due to his physical condition, Andrews was not ambulatory. Piedmont placed Andrews in the area adjacent to the ticket counter so they could periodically check on him and find him when the ambulance arrived. There is no evidence that he protested waiting there or that he asked to be moved to another location. Further, after Irwin arrived, Andrews did not leave in Irwin's personal car, but chose to wait for the ambulance in this same area. In light of Andrews' condition, the alleged restraint was reasonable and it might well have been a breach of a Piedmont's duty if they had not detained him until Irwin arrived. The trial court correctly granted the motion for summary judgment on the cause of action for false imprisonment.

   For the reasons stated, we affirm the judgment.

   Affirmed.