675 S.E.2d 439

Alex KIRIAKIDES, III, Mary Ann Kiriakides, and Michael Kiriakides, as Personal Representatives of the Estate of Alex Kiriakides, Jr., Appellants/Respondents,

v.

The SCHOOL DISTRICT OF GREENVILLE COUNTY, South Carolina, a Political Subdivision, Respondent/Appellant.

No. 26621.

Supreme Court of South Carolina.

Heard Dec. 3, 2008.

Decided March 30, 2009.

David Lloyd Thomas, of Moore, Taylor & Thomas, of Greenville, and S. Jahue Moore, of Moore, Taylor & Thomas, of West Columbia, for Appellants–Respondents.

Thomas W. Traxler and Travis V. Olmert, both of Carter, Smith, Merriam, Rogers & Traxler, of Greenville, for Respondent–Appellant.

Justice BEATTY:

Alex Kiriakides, Jr. (Kiriakides) sued the School District of Greenville County (the School District) to prevent it from condemning his property. He also sought damages for inverse condemnation for the School District's alleged delay in this matter, as well as attorneys' fees. The master-in-equity found in favor of the School District on the condemnation claims, but awarded attorneys' fees to Kiriakides. Kiriakides and the School District filed cross appeals.[1] We affirm.

## I. FACTS

Kiriakides owned property in Greenville County that was formerly the site of the Bijou Theater, an eight-theater multiplex. During the first half of 2001, the property was under a

1. Alex Kiriakides, Jr. passed away before oral argument was held in this matter. This appeal continues via his personal representatives.

monthly lease to United Artists. United Artists was in bankruptcy proceedings during this time.

In February 2001, a real estate agent working for the School District, Henry Garrison, advised Kiriakides that the School District was interested in purchasing the property. The Kiriakides property adjoined Wade Hampton High School, and the School District wanted to renovate and expand the school. Kiriakides initially informed Garrison that he did not want to sell the property, but that he would lease it.

In June 2001, United Artists stopped paying rent and moved out of the theater. Kiriakides and the School District continued their negotiations for a voluntary sale until approximately April 2002, but when the negotiations proved unsuccessful, the School District began the process to acquire the property by eminent domain.

The School District retained an appraiser as part of the preliminary preparation for a condemnation proceeding, but Kiriakides refused to allow entry on his property. On April 30, 2002, the School District filed a complaint seeking an order of entry. On May 1, 2002, the circuit court issued an "Order for Entry Pursuant to S.C.Code Ann. § 28–2–70 (1991)" allowing the School District to enter upon the property to make a survey, to determine the location of proposed improvements, and to prepare an appraisal.

Due to the workload of the appraiser, the appraisal was first given to the School District in late July 2002. On or about August 12, 2002, the School District served Kiriakides with a "Condemnation Notice and Tender of Payment" pursuant to the South Carolina Eminent Domain Procedure Act.[2]

The School District never filed the condemnation action with the court, however, because on August 23, 2002, Kiriakides instituted the current action challenging the right of the School District to condemn his property. In his pleadings, Kiriakides additionally sought damages for inverse condemnation and attorneys' fees, alleging "[t]he stigmatization of [his] property as well as the unreasonable delay in commencing condemnation [proceedings] has amounted to an inverse condemnation of [his] property."

2. The Act is codified at S.C.Code Ann. §§ 28–2–10 to –510 (2007).

In May 2003, because of the urgency of the school construction project and the existence of this litigation challenging the right to proceed with condemnation, the School District notified Kiriakides that it had abandoned its efforts to condemn the property. The School District ultimately purchased a different piece of property located nearby.

Thereafter, in December 2005, the master held a bench trial regarding Kiriakides's complaint. By order filed May 4, 2006, the master ruled in favor of the School District, finding as follows: (1) Kiriakides's challenge to the School District's right to condemn his property was moot because the School District had abandoned its condemnation efforts; (2) any challenge to the delay in the condemnation proceedings was likewise moot and there was no evidence of delay, in any event; and (3) Kiriakides had not established his inverse condemnation claim and was not entitled to damages.

After a post-trial motion and hearing, the master awarded Kiriakides $6,500 in attorneys' fees pursuant to a provision in the South Carolina Eminent Domain Procedure Act based on his finding that the School District had "abandoned its condemnation efforts." This cross appeal followed.

## II. LAW/ANALYSIS

On appeal, Kiriakides challenges the master's ruling in favor of the School District on his claim for inverse condemnation, and the School District challenges the master's award of attorneys' fees to Kiriakides.

### A. KIRIAKIDES'S APPEAL

Kiriakides contends the master erred in denying his claim for inverse condemnation. We disagree.

"The concept of inverse condemnation was originally conceived as a remedy for the physical taking of private property without following eminent domain procedures." 11A Eugene McQuillin, *The Law of Municipal Corporations* § 32.132.20 (3d ed.2000) (citing, inter alia, *Woods v. State,* 314 S.C. 501, 431 S.E.2d 260 (Ct.App.1993)). "Inverse condemnation is, therefore, a cause of action against a governmental defendant to recover the value of property which has been taken in fact

by a governmental entity although not through eminent domain procedures." *Id.*

"One basic difference between condemnation and inverse condemnation is that in condemnation proceedings, the governmental entity is the moving party, whereas, in inverse condemnation, the property owner is the moving party." *South Carolina State Highway Dep't v. Moody,* 267 S.C. 130, 136, 226 S.E.2d 423, 425 (1976).

A landowner has the burden of proving damages for the taking of the landowner's property, whether through condemnation proceedings or by inverse condemnation. *Brenco v. South Carolina Dep't of Transp.,* 377 S.C. 124, 128, 659 S.E.2d 167, 169 (2008) (citing *Owens v. South Carolina State Highway Dep't,* 239 S.C. 44, 54, 121 S.E.2d 240, 245 (1961)).

Not all damages that are suffered by a private property owner at the hands of the governmental agency are compensable. *Woods v. State,* 314 S.C. 501, 504, 431 S.E.2d 260, 262 (Ct.App.1993). The property itself must suffer some diminution in substance, or it must be rendered intrinsically less valuable. *Id.*

"[I]n an inverse condemnation case, the trial judge will determine whether a claim has been established; the issue of compensation may then be submitted to a jury at either party's request." *Cobb v. South Carolina Dep't of Transp.,* 365 S.C. 360, 365, 618 S.E.2d 299, 301 (2005).

Inverse condemnation claims can result from two instances: "An inverse condemnation may result from the government's physical appropriation of private property, or it may result from government-imposed limitations on the use of private property." *Byrd v. City of Hartsville,* 365 S.C. 650, 656, 620 S.E.2d 76, 79 (2005).

In the second instance, where there is a regulatory inverse condemnation, there are two elements that must be shown: (1) affirmative conduct, and (2) a taking. *Id.* at 657, 620 S.E.2d at 80. The analysis of whether a taking has occurred is governed by the case of *Penn Central Transportation Co. v. City of New York,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978) when the claim stems from an allegation of

a temporary denial of less than all economically viable use of the property. *Id.* at 658, 620 S.E.2d at 80. "In the context of a regulatory delay, the *Penn Central* inquiry is whether the delay ever became unreasonable." *Id.* at 660, 620 S.E.2d at 81. "Until regulatory delay becomes unreasonable, there is no taking." *Id.*

As enumerated in *Byrd,* two circumstances are particularly important: (1) the economic impact on the claimant, especially the extent to which the governmental entity has interfered with the claimant's investment-backed expectations, and (2) the character of the governmental action. *Id.* at 659, 620 S.E.2d at 80 (citing *Penn Central,* 438 U.S. 104, 124, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978)).

In the case now before us, the parties conceded, and the master specifically found, that there was never any physical occupation or appropriation of Kiriakides's property, the first type of taking under *Byrd.* Rather, Kiriakides asserted the stigmatization of his property by the threat of condemnation amounted to a *regulatory* inverse condemnation under the second prong of *Byrd.*

In rejecting this assertion of a regulatory inverse condemnation, the master found there was no act and no taking by the School District that would come within the parameters of an inverse condemnation claim. The master noted: "The parties agree that the School District never imposed any regulations or restrictions on the property of Mr. Kiriakides. The School District's pre-condemnation activities and the service of the Condemnation Notice and Tender of Payment to Mr. Kiriakides certainly did not give rise to a taking, regulatory or otherwise."

The master stated that "[a] *regulatory taking* by its very nature necessitates the existence of some regulation, statute, ordinance, zoning law, or similar rule of law that impacts a landowner's use of his property. In other words, regulatory takings exist only in conjunction with affirmative governmental restrictions on the use of land." The master further stated: "Such was the essence of the *Byrd* case, where Mr. Byrd's property was restricted by zoning regulations, and in *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992)[,] where land use restric-

tions constituted a regulatory taking. That does not exist in this case."

The master additionally observed his conclusion was supported by public policy, namely, the construction of public projects would be severely impeded if the government incurred liability for inverse condemnation as a result of merely announcing plans to condemn, citing *National By–Products, Inc. v. City of Little Rock*, 323 Ark. 619, 916 S.W.2d 745, 749 (1996) ("Construction·of public-works projects would be severely impeded if the government could incur inverse condemnation liability merely by announcing plans to condemn property in the future."); *Santini v. Connecticut Hazardous Waste Management Service*, 251 Conn. 121, 739 A.2d 680, 691 (1999) ("[I]f the government were to be considered as having accomplished a compensable taking as a result of mere planning that, because of its publicity, harmed the value of property, public planning would be discouraged. . . ."); *City of Buffalo v. J.W. Clement Co.*, 28 N.Y.2d 241, 321 N.Y.S.2d 345, 269 N.E.2d 895, 903–04 (1971) (stating the threat of condemnation generally does not constitute a taking and any changes in value are incidents of ownership). The master stated that Kiriakides's arguments, "if accepted, would have a devastating impact on government and its citizens."

■ We agree with the master's determination that Kiriakides did not establish a claim for inverse condemnation. We find no merit to his arguments that the mere threat of a condemnation suit stigmatized his property and that the School District's alleged delay in bringing this action entitled him to damages for an inverse condemnation.

The Supreme Court of the United States has held that the "impairment of the market value of real property incident to otherwise legitimate government action ordinarily does not result in a taking." *Kirby Forest Indus. v. United States*, 467 U.S. 1, 15, 104 S.Ct. 2187, 81 L.Ed.2d 1 (1984). In *Kirby Forest*, the Supreme Court concluded the landowner "failed to demonstrate that its interests were impaired in any constitutionally significant way before the Government tendered payment and acquired title in the usual course." *Id.* at 16, 104 S.Ct. 2187.

The mere institution of condemnation proceedings does not constitute a taking, as it is a legitimate exercise of the government's authority. *See generally* 29A C.J.S. *Eminent Domain* § 90 (2007) (stating the mere planning in anticipation of a public improvement is not an actionable taking of property); J.R. Kemper, Annotation, *Plotting or Planning in Anticipation of Improvement as Taking or Damaging of Property Affected,* 37 A.L.R.3d 127 (1971 & Supp.2008) (discussing acts performed in preparation for and as part of condemnation proceedings and the imposition of liability therefor).

The evidence shows that the School District and Kiriakides engaged in extensive negotiations concerning a voluntary sale of the property until at least April 2002. During this time, no public action was taken by the School District that would "stigmatize" the property as Kiriakides alleges, as the communications were solely with Kiriakides and there was no public filing of a condemnation action. The first public communication occurred when Kiriakides refused to allow an appraiser to enter his property and the School District filed a motion in April 2002 seeking an order allowing entry.

Thereafter, when negotiations failed, the School District followed the statutory procedures for an eminent domain action and served a notice of condemnation in August 2002. Kiriakides challenged the School District's right to condemn within thirty days of being served with notice by the School District by filing the current, separate action, as was his right under state law, which stayed the condemnation proceedings. *See* S.C.Code Ann. § 28-2-470 (2007) (providing an "action [challenging a condemnor's right to condemn] must be commenced within thirty days after service of the Condemnation Notice upon the landowner" and that "[a]ll proceedings under the Condemnation Notice are automatically stayed until the disposition of the action, if any, unless the landowner and the condemnor consent otherwise").

We discern no unreasonable delay or bad faith conduct on the part of the School District in this matter. The School District never tried to obtain possession of Kiriakides land, and until Kiriakides refused to allow an appraiser on his property, it had made no public filing in this case. If anything, Kiriakides's failure to cooperate with the School Dis-

trict's efforts to obtain an appraisal and his challenge to the School District's right to condemn extended these proceedings. Further, Kiriakides presented no evidence of damages. He offered no proof that the value of his property was diminished or that he lost any potential sales of his property due to the proceedings. In fact, Kiriakides admitted that he had not tried to sell his property during this time.

The School District's actions were part of the statutorily-mandated process for condemnation, and did not constitute an unreasonable delay in these circumstances that would establish a compensable claim. *See Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 335, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002) ("A rule that required compensation for every delay in the use of property would render routine government processes prohibitively expensive or encourage hasty decision-making."); *Woods*, 314 S.C. at 504, 431 S.E.2d at 262 (holding not all damages suffered by private property owners at the hands of the government are compensable). The nine-month period between the time the School District served notice of the condemnation in August 2002 until it notified Kiriakides in writing in May 2003 that it was abandoning the condemnation proceeding due to Kiriakides's opposition and the need to proceed with the project did not establish a taking. *Cf. Byrd*, 365 S.C. at 661–63, 620 S.E.2d at 82 (finding an eleven-month delay in evaluating the rezoning of certain property did not result in a regulatory taking and inverse condemnation).

The master observed that cases from other jurisdictions overwhelmingly hold that normal activities incident to condemnation do not rise to the level of a taking. *See Joseph M. Jackovich Revocable Trust v. Alaska Dep't of Transp.*, 54 P.3d 294, 302 (Alaska 2002) (stating "there is no indication the state did anything more than make announcements, prepare and publish plans, and provide publicity concerning the project" and no evidence the state interfered with the property rights of the landowners); *City of Chicago v. Loitz*, 11 Ill.App.3d 42, 295 N.E.2d 478, 480 (1973) (observing "the weight of authority in other states and in the Federal courts, is that mere planning by a governmental body in anticipation of the taking of land for public use and preliminary steps taken to accomplish this, without the filing of proceedings and without physi-

cally taking or actual invasion of the real estate, is not actionable by the owner of the land").

To the extent Kiriakides's alleges the master improperly considered public policy in determining no inverse condemnation occurred in this matter, we find no error. The master merely cited this as additional support for his conclusion that Kiriakides's position was untenable because if it was accepted, the government would be faced with inverse condemnation claims every time it attempted to survey property and obtain an appraisal, which would preclude the government from engaging in normal activities incident to a condemnation. Accordingly, based on the foregoing, we affirm the master's determination that Kiriakides did not establish a claim for inverse condemnation.

## B. THE SCHOOL DISTRICT'S APPEAL

In its cross appeal, the School District contends the master erred in awarding statutory attorneys' fees to Kiriakides. We disagree.

In the order ruling on Kiriakides's complaint, the master found that, "because the School District abandoned its condemnation efforts, that part of the present litigation challenging its right to condemn has been rendered moot." Kiriakides filed a post-trial motion seeking a determination whether he was entitled to attorneys' fees, stating he had requested attorneys' fees in his complaint, but the issue was not addressed in the master's order.[3]

After a hearing, the master issued an order on December 5, 2006, finding Kiriakides was entitled to attorneys' fees pursuant to section 28–2–510(C) of the South Carolina Code, which allows a landowner costs and fees in the event a condemnor abandons a "condemnation action" as follows:

If the condemnor abandons or withdraws the *condemnation action* in the manner authorized by this chapter, the con-

---

3. We find the issue is preserved for our review under these circumstances.

demnee is entitled to reasonable attorney fees, litigation expenses, and costs as determined by the court.

S.C.Code Ann. § 28–2–510(C) (2007) (emphasis added).

The master concluded a reasonable fee would be $6,500, which "fairly represents the portion of the fees in this case that were necessarily related to the issues of abandonment or withdrawal of the condemnation action by the Defendant." [4] On appeal, the School District contends this was error.

The decision to award or deny attorneys' fees under a state statute will not be disturbed on appeal absent an abuse of discretion. *Layman v. State,* 376 S.C. 434, 444, 658 S.E.2d 320, 325 (2008). "An abuse of discretion occurs when the conclusions of the trial court are either controlled by an error of law or are based on unsupported factual conclusions." *Id.* "Similarly, the specific amount of attorneys' fees awarded pursuant to a statute authorizing reasonable attorneys' fees is left to the discretion of the trial judge and will not be disturbed absent an abuse of discretion." *Id.*

### (1) Applicability of Section 28–2–510(C).

The School District argues the master erred in awarding attorneys' fees to Kiriakides under section 28–2–510(C) of the South Carolina Eminent Domain Procedure Act because the statute is inapplicable. The School District asserts that, although it *served* Kiriakides with a Condemnation Notice and Tender of Payment, it never *filed* the notice with the circuit court; therefore, the action was never commenced. Consequently, it is not liable for attorneys' fees for the abandonment of a "condemnation action."

The master rejected this argument, finding "under the unique facts of this case," a party is entitled to attorneys' fees if the condemnor abandons the action after *service* of the Condemnation Notice. The master reasoned that "[t]o hold otherwise would . . . encourage a governmental entity to serve its Condemnation Notice, chill the value of the property, negotiate until it determines that the value sought by the landowner is still too high or that another parcel is more

---

4. Kiriakides submitted an affidavit and statement seeking attorneys' fees of $13,775, representing 55.1 hours at $250 per hour.

suitable, and then unilaterally withdraw its Notice with complete impunity since a condemnation lawsuit was never filed. All to the detriment of the landowner. This certainly cannot be the result intended by our Legislature."

Under Rule 3 of the South Carolina Rules of Civil Procedure, a civil action is generally deemed commenced by filing and serving a summons and complaint. Rule 3(a), SCRCP. Under this rule, both filing and service are required to institute an action. *See* 24 S.C. Juris. *Rules of Civil Procedure* § 3.2 (1994) ("Subpart 3(a) requires both the filing and service of a summons and complaint prior to the commencement of a civil action. The South Carolina courts have demanded literal compliance with Rule 3(a).").

The provisions of the South Carolina Eminent Domain Procedure Act, however, constitute the exclusive procedure for condemnation in this state. S.C.Code Ann. § 28–2–210 (2007). Moreover, these provisions control over the South Carolina Rules of Civil Procedure. *Id.* § 28–2–120 ("In the event of conflict between this act and the South Carolina Rules of Civil Procedure, this act shall prevail.").

In this case, section 28–2–30(5) specifically states a " '[c]ondemnation action' includes all acts incident to the process of condemning property *after the service* of a Condemnation Notice." *Id.* § 28–2–30(5) (emphasis added).

The Act also makes reference to service in other provisions. For example, section 28–2–470 provides that a separate action to challenge the condemnor's right to condemn automatically stays a proceeding for condemnation, and the Act requires this separate action to be filed within thirty days after *service* of the Condemnation Notice. *Id.* § .28–2–470.

In addition, the Act defines litigation expenses as those incurred from the time of service of the Condemnation Notice, again referencing service:

(14) "Litigation expenses" means the reasonable fees, charges, disbursements, and expenses *necessarily incurred from and after service of the Condemnation Notice,* including, but not limited to, reasonable attorney's fees....

*Id.* § 28–2–30(14) (emphasis added).

The provisions of the Act are unique and thus the commencement of the condemnation action cannot be measured in terms of regular civil proceedings:

The Act does not require the issuance of a summons and complaint and the filing of responsive pleadings. *Rather, the procedure begins with service of a condemnation notice.* The condemnation notice may be served in any manner allowed for serving a summons and complaint in a civil action.

18 S.C. Juris. *Eminent Domain* § 38 (1993) (emphasis added) (footnotes omitted).

 Although there are references to filing in the Act,[5] we hold service marks the time for commencement of the action as defined in the Act. Thus, we find section 28–2–510(C) is applicable in this instance.

### (2) Contingency Fee Agreement.

 The School District further argues the master erred in awarding attorneys' fees to Kiriakides because he legally owed no fees to his attorneys. One of Kiriakides's attorneys testified that he and his co-counsel had no written fee agreement with Kiriakides, but they did have a contingency fee arrangement with him—their understanding was they were to be paid if Kiriakides recovered on his claims. The attorney acknowledged that they had not billed Kiriakides for any fees and that Kiriakides had paid no fees. [R. 44–46] The School District argues that, because Kiriakides did not prevail on his inverse condemnation claim and he did not obtain a recovery, no attorneys' fees were legally due, relying upon the case of *South Carolina Public Service Authority v. Weeks*, 201 S.C. 199, 22 S.E.2d 249 (1942).

In *Weeks*, we considered a statutory provision allowing attorneys' fees for the abandonment of eminent domain proceedings that provided as follows:

At any time prior to the final conclusion of the condemnation proceeding provided for in this Act and prior to entry into possession by such State Authority, it may abandon, withdraw or dismiss such condemnation proceedings upon payment by it to the owner of all costs and expenses incurred by the owner, and the amount of such costs and

---

5. For example: "In all condemnation actions, the date of valuation is the date of the filing of the Condemnation Notice." S.C.Code Ann. § 28–2–440 (2007) (referencing filing).

expenses shall constitute a lien, for the payment thereof, upon any award theretofore deposited in said proceeding by said Authority.

*Id.* at 200–01, 22 S.E.2d at 249.

The parties in *Weeks* had a contingency fee agreement to compensate the attorneys one-half of the amount recovered over and above what the condemnor offered, but there was no recovery obtained as the condemnation proceeding was abandoned. *Id.* at 202, 22 S.E.2d at 250. Consequently, no fees were owed under the terms of the agreement. The trial judge allowed attorneys' fees, however, on the theory of quantum meruit. *Id.* Upon review, we noted that, we found this was error, stating:

> [T]he agreement was for a contingent fee, contingent upon recovery and, incidentally, recovery of more than the amount offered for the land by the condemnor. This contingency never occurred, the event of recovery did not transpire, because the condemnation was abandoned, and the right to that course by the condemnor is not challenged.
> * * * *
>
> Undoubtedly, generally where an attorney is discharged without cause by his client after they have entered into a contingent fee agreement, he is entitled to compensation....
>
> The latter, however, is not the case now presented. No action on the part of the landowners prevented the happening of the contingency; it failed because of the abandonment of the condemnation by the appellant. The inevitable result is that the attorneys by force of the terms of their contract, voluntarily entered into, are entitled to no compensation.

*Id.* at 202–03, 22 S.E.2d at 250.

The master noted the holding of the *Weeks* case, but concluded: "Notwithstanding, I find that Plaintiff and his attorneys had a reasonable expectation of payment and that [section 28–2–510(C) ] entitles Plaintiff, as the owner of property which was subject to an abandoned condemnation action, to reasonable attorneys['] fees. Further, even though an express contract for legal services was not entered into, the law in this State is clear that under the facts of a case such as this, the law will imply one."

Kiriakides maintains *Weeks* is distinguishable because the statute there referred to "all costs and expenses incurred by the owner," which requires the fees to be actually incurred, whereas section 28–2–510(C) generally provides for the recovery of "reasonable" attorneys' fees, which means the fees need not be actually incurred. The South Carolina Eminent Domain Procedure Act, however, defines "litigation expenses" as those "reasonable ... expenses *necessarily incurred* from and after service of the Condemnation Notice, including, but not limited to, reasonable attorney's fees...." S.C.Code Ann. § 28–2–30(14) (emphasis added).

In the current appeal, Kiriakides's attorneys had an unwritten agreement to be paid on a contingency basis—essentially they would recover a percentage of any award Kiriakides obtained. They included a request for attorneys' fees in their pleadings, but the School District subsequently abandoned its condemnation action. As one treatise has stated:

> Some courts have denied recovery for attorneys' fees which were wholly contingent upon the payment of an award or judgment in the condemnation proceeding, when the proceeding was abandoned by the condemnor. [Citing, *inter alia, South Carolina Public Service Authority v. Weeks*, 201 S.C. 199, 22 S.E.2d 249 (1942).] However, other courts have held or recognized that the recovery of attorneys' fees in such a situation is not barred by the existence of a contingency fee agreement between the property owner and the owner's attorney, rejecting the contention that the contingent nature of the agreement meant that fees were not "incurred" by the landowner and thus not recoverable.

2 Robert L. Rossi, *Attorneys' Fees* § 11:38 (3d ed.2001) (footnotes omitted).

We agree with the master's determination that Kiriakides was entitled to attorneys' fees under these circumstances. We hereby overrule *Weeks* to the extent that it conflicts with section 28–2–510(C), as the obvious intent of this statute is to allow a landowner to recover his expenses in the event of abandonment of a condemnation proceeding. Further, we see no reason to differentiate situations where a party terminates the attorney and those where the condemnor terminates the proceeding. Having found the School District abandoned its

efforts to condemn Kiriakides's property, we hold attorneys' fees were properly awarded. We note that on appeal the School District has challenged Kiriakides's entitlement to attorneys' fees, but it has not challenged the reasonableness of the master's award. Accordingly, we affirm the award of attorneys' fees to Kiriakides in the amount of $6,500.

## III. CONCLUSION

Based on the foregoing, we affirm the master's determination that Kiriakides has not established his claim for inverse condemnation and that Kiriakides is entitled to attorneys' fees pursuant to section 29–2–510(C) of the South Carolina Code for the School District's abandonment of its condemnation proceeding.

**AFFIRMED.**

TOAL, C.J., WALLER and PLEICONES, JJ., concur.
KITTREDGE, J., not participating.