714 S.E.2d 869

**CAROLINA CHLORIDE, INC., Respondent/Petitioner,**

v.

**RICHLAND COUNTY, a South Carolina Political Subdivision, Petitioner/Respondent.**

No. 27013.

Supreme Court of South Carolina.

Heard March 15, 2011.

Decided July 25, 2011.

158

Andrew F. Lindemann, William H. Davidson, II, and Michael B. Wren, of Davidson & Lindemann, of Columbia, for Petitioner–Respondent.

Edward D. Sullivan, Christian Stegmaier, and Amy L. Neuschafer, of Collins & Lacy, of Columbia, for Respondent–Petitioner.

Justice BEATTY.

Carolina Chloride, Inc. brought this action against Richland County alleging the County incorrectly advised it of the legal zoning classification of its property and that it lost a potential sale of the property due to the zoning issue. The trial judge directed a verdict for the County on all of Carolina Chloride's claims. The Court of Appeals reversed and remanded as to the claims for negligence and negligent misrepresentation, but upheld the directed verdict as to Carolina Chloride's remaining claims. *Richland County v. Carolina Chloride, Inc.*, 382 S.C. 634, 677 S.E.2d 892 (Ct.App.2009).[1] This Court granted cross-petitions from the County and Carolina Chloride seeking writs of certiorari to review the decision of the Court of Appeals. We affirm in part and reverse in part.

## I. FACTS

In November 1996, Carolina Chloride purchased 7.67 acres of land from IBM for $85,000.00. The land was located on Killian Road in Richland County, near some railroad tracks. Carolina Chloride intended to use the property for storing and

---

1. Because Carolina Chloride is the initiating party for this lawsuit, we have returned the captioning to its designation as it appeared in the trial court.

distributing calcium chloride, a chemical used to control dust and ice on roads, as well as to treat drinking water. This use required M–2 zoning, which designated a Heavy Industrial District. Robert Morgan was the sole owner of Carolina Chloride.

Prior to the purchase, Carolina Chloride's realtor, Ervin Ott, contacted the County to inquire about the zoning classification of the IBM property. The realtor could not recall who he had spoken to, but stated the person informed him the IBM property was zoned M–2. There is no indication that either Morgan or Ott personally checked the County's Official Zoning Map or the ordinances establishing the zoning districts.

Shortly after Carolina Chloride purchased the property, Morgan, its president, requested a building permit from the County. A question arose about the property's zoning, so Morgan visited Terry Brown, who was then the County's Zoning Administrator. Brown told Morgan he would check into it and get back to him.

In a letter to Morgan dated December 5, 1996, Brown stated that it was his "opinion" that the property "should properly be zoned M–2, Heavy Industrial." Brown added, "The *tax map* was in error and has been *amended* to reflect the proper zoning of M–2, Heavy Industrial." (Emphasis added.) There is no indication in the record, however, that Brown ever produced an Official Zoning Map or ordinance showing the property was zoned M–2 by County Council.

Over the next several years, Carolina Chloride added improvements of more than $400,000.00 to the property, including a mini-warehouse business. As part of this process, Carolina Chloride requested and received the necessary County approval. The employees indicated on the various permits and other documents that the property was zoned M–2.

In 2002, Morgan began negotiating with Allen Watson, his son, Luke Watson, and Luke's wife, Johnette, for the sale of the property and the businesses for $1.1 million. Questions arose about an easement and possibly splitting the lot as the Watsons were contemplating selling off the chemical business and expanding the mini-warehouse business. During the negotiations, Morgan and the Watsons contacted the County

about whether the Watsons' planned expansion of the mini-warehouse business would be in conformance with the property's legal zoning designation.

On February 13, 2003, John Hicks, whose County letterhead identified him as the Development Services Manager, wrote to Morgan at Carolina Chloride and advised him that the Carolina Chloride property was actually zoned RU (Rural District), not M–2, and that the existing facilities were nonconforming uses that could legally continue, but could not be expanded. Hicks enclosed a copy of the portion of the Official Zoning Map showing the RU designation on Carolina Chloride's parcel. However, Hicks encouraged Morgan to file an application for County Council to rezone the property:

> You may apply to amend the existing zoning map to M–2 or some other suitable zoning district. Zoning map amendments require action by the Planning Commission and adoption of an ordinance by the County Council. The process requires about three months to complete.

Carolina Chloride did not immediately petition for County Council to rezone the property. Instead, Morgan submitted Brown's 1996 letter stating it was his opinion the property was zoned M–2 to County officials and asked them to take corrective action, but they declined to do so. Morgan continued his existing operations on the property during this time without interference from the County.

Some six months later, on August 1, 2003, Carolina Chloride submitted an "Official Zoning Map Amendment Application" seeking rezoning of the property to M–2. On October 21, 2003, County Council gave a third reading to an ordinance officially rezoning the Carolina Chloride property from RU to M–2, and it was attested to by the Clerk of Council on November 4, 2003.

Meanwhile, the Watsons decided not to purchase the Carolina Chloride property and businesses, reportedly due to the zoning issue. However, no written contract had ever been executed by the parties, and Morgan acknowledged that there were several contingencies to their arrangement. For example, Allen Watson wanted Morgan to work for him for a year and exercise due diligence in the handling of some financial records. Additionally, there was an issue regarding how to

handle the income from a cell phone tower on the property that went directly to Morgan rather than to Carolina Chloride.

In 2005, Carolina Chloride filed an amended complaint against Richland County asserting numerous civil claims, including, among others, constructive fraud, deprivation of substantive due process, governmental and promissory estoppel, gross negligence, inverse condemnation, negligence, and negligent misrepresentation. Carolina Chloride essentially alleged the County had incorrectly advised it of the legal zoning classification of its property and that it had lost a potential sale due to the zoning issue.

After Carolina Chloride presented its case-in-chief, the trial judge directed a verdict for the County on all of Carolina Chloride's claims. The Court of Appeals reversed and remanded as to the claims for negligence and negligent misrepresentation, but upheld the directed verdict as to the remaining claims Carolina Chloride presented on appeal. The County and Carolina Chloride both appeal.

## II. LAW/ANALYSIS

### A. THE COUNTY'S APPEAL

The County argues the Court of Appeals erred in reversing the directed verdict in its favor on Carolina Chloride's claims for negligence and negligent misrepresentation.

### (1) Negligence and Negligent Misrepresentation

■ As an initial matter, the County argues the Court of Appeals erred in finding there was a factual question regarding the zoning designation of the property that precluded a judgment in its favor as a matter of law. The County asserts zoning designations are legal, not factual, issues.

The County further argues the Court of Appeals erred in reversing the grant of a directed verdict on the claims for negligence and negligent misrepresentation because those claims are premised on a misstatement of law upon which Carolina Chloride had no justifiable right to rely.

In contrast, Carolina Chloride contends its negligence claim is based not only on the County's statements regarding the property's zoning designation, but also on the County's failure

to exercise reasonable care in maintaining and interpreting the Official Zoning Map and associated records. Carolina Chloride asserts the County committed negligence by virtue of the failure of Brown in 1996 or Hicks in 2003 to advise Carolina Chloride of the correct legal zoning classification of its property.

■ "When upon a trial the case presents only questions of law the judge may direct a verdict." Rule 50(a), SCRCP. The trial judge must deny a motion for a directed verdict when the evidence yields more than one inference or its inference is in doubt. *Steinke v. South Carolina Dep't of Labor, Licensing & Regulation,* 336 S.C. 373, 520 S.E.2d 142 (1999).

■ "When reviewing a ruling on a motion for directed verdict, we must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party." *Hurd v. Williamsburg County,* 363 S.C. 421, 426, 611 S.E.2d 488, 491 (2005). This is the same standard applied by the trial judge. *All Saints Parish Waccamaw v. Protestant Episcopal Church in Diocese of S.C.,* 385 S.C. 428, 685 S.E.2d 163 (2009).

■■ Neither the trial judge nor the appellate court has the authority to decide credibility issues or to resolve conflicts in the testimony or evidence. *Welch v. Epstein,* 342 S.C. 279, 536 S.E.2d 408 (Ct.App.2000). This Court will reverse the trial judge's ruling only when there is no evidence to support the ruling or it is controlled by an error of law. *Gadson ex rel. Gadson v. ECO Servs. of S.C., Inc.,* 374 S.C. 171, 648 S.E.2d 585 (2007).

■ To recover on a claim for negligence, a plaintiff "must show (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach." *Tanner v. Florence County Treasurer,* 336 S.C. 552, 561, 521 S.E.2d 153, 158 (1999) (quoting *Andrews v. Piedmont Air Lines,* 297 S.C. 367, 369, 377 S.E.2d 127, 128 (1989)). "The absence of any one of these elements renders the cause of action insufficient." *Andrews,* 297 S.C. at 369, 377 S.E.2d at 128–29.

■ "To establish liability for negligent misrepresentation, the plaintiff must show '(1) the defendant made a false repre-

sentation to the plaintiff; (2) the defendant had a pecuniary interest in making the representation; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance upon the representation.'" *Sauner v. Pub. Serv. Auth. of South Carolina*, 354 S.C. 397, 407, 581 S.E.2d 161, 166 (2003) (quoting *AMA Mgmt. Corp. v. Strasburger*, 309 S.C. 213, 222, 420 S.E.2d 868, 874 (Ct.App.1992)).

■■ "The duty of care is not a duty to take every possible care, still less is it a duty to be right; it is the familiar duty to exercise that care a reasonable man would take in the circumstances." *AMA Mgmt. Corp.*, 309 S.C. at 223, 420 S.E.2d at 874. "[T]he plaintiff as part of his case must show that his reliance on the misrepresentation was reasonable." *Id.* "There is no liability for casual statements, *representations as to matters of law*, or matters which plaintiff *could ascertain on his own* in the exercise of due diligence." *Id.* (emphasis added).

The trial judge directed a verdict on the claims for negligence and negligent misrepresentation on several grounds, including, as to negligent misrepresentation, that Carolina Chloride could have, through reasonable diligence, acquired knowledge of the proper zoning designation from the public records, and that both claims were barred by the South Carolina Tort Claims Act.

The Court of Appeals ruled a question of fact existed as to the proper zoning designation of the property and that Carolina Chloride did not have the ability to determine the true zoning designation from the public records. *Carolina Chloride*, 382 S.C. at 652, 677 S.E.2d at 901. It also found the claims were not barred by the Tort Claims Act. *Id.* at 648–51, 677 S.E.2d at 899–901.

On appeal to this Court, the County argues the zoning designation of property is a legislative decision that is established by ordinance, and it is a matter of law, not fact, citing this Court's recent opinion in *Quail Hill, L.L.C. v. County of Richland*, 387 S.C. 223, 692 S.E.2d 499 (2010). The County

asserts the applicable legal zoning classification is not subject to the discretion of government officials, and it cannot be changed except through legislative action by County Council as prescribed by law. Thus, the legal zoning classification of any particular parcel of property may be ascertained only by referring to the ordinance establishing the zoning as well as by referring to the Official Zoning Map of Richland County.

The County contends there is no indication in the record that the Official Zoning Map ever showed the subject property to be zoned M–2 prior to County Council's enactment of the 2003 ordinance changing the zoning from RU to M–2. Further, the record does not support a finding that John Hicks made a mistake in his February 13, 2003 letter about the zoning. Rather, he accurately reported that the Official Zoning Map characterized the property as RU, and he provided a copy of the map to Carolina Chloride. Moreover, contrary to Carolina Chloride's assertion, Hicks's statement was not an "overruling" of the M–2 classification mentioned by Brown. Rather, Brown was mistaken when he reported that he believed the property to be M–2.

In *Quail Hill*, the plaintiff alleged it had relied on the mistaken representations of the County, prior to purchasing its property, that the property was zoned RU (Rural District), a classification that would allow it to develop manufactured housing on the property. *Quail Hill*, 387 S.C. at 227, 692 S.E.2d at 501. The information was conveyed by Richland County Subdivision Coordinator Carl Gosline based on his review of the County's records, including tax records. *Id.* However, after Quail Hill began development, the County's Zoning Administrator consulted the Official Zoning Map in response to complaints from neighboring landowners and determined the property was actually zoned RS–1, a residential classification that prohibits manufactured homes. *Id.* at 228, 692 S.E.2d at 502. County Council thereafter denied Quail Hill's request to rezone the property from RS–1 to RU. *Id.* at 229, 692 S.E.2d at 502. Quail Hill did not appeal from the County's decision, but instead brought a civil action alleging, among other claims, negligence and negligent misrepresentation. *Id.*

This Court found Quail Hill's claims for negligence/negligent misrepresentation (which were treated as one claim) based on the incorrect zoning information failed as a matter of law. *Id.* at 240–41, 692 S.E.2d at 508–09. We ruled Quail Hill could not justifiably rely on the representations of County staff as to the proper zoning designation because the plaintiff could have reviewed the Official Zoning Map to ascertain the correct zoning classification of the property. *Id.* at 241, 692 S.E.2d at 509. Further, we held that misrepresentations as to matters of law are not actionable and that the zoning classification of property is a matter of law, not fact. *Id.; see also id.* at 238, 692 S.E.2d at 507 (recognizing that the zoning classification of property is a matter of law).

Similarly, in the current appeal, there was a mistake made in advising the property owner of the property's legal zoning classification. Brown incorrectly advised Carolina Chloride, after its purchase, that the property was zoned M–2 based on his review of the "tax map." Brown did not state that he had ever reviewed the Official Zoning Map, however, and the only documents in the record indicate that the Official Zoning Map has consistently listed this property as being zoned RU, not M–2. The County states part of the confusion might have arisen because when IBM owned the 7.67 acres it sold to Carolina Chloride, it was part of a larger parcel designated as Tax Map Number 17–400–04–02. However, after the 7.67 acres were purchased by Carolina Chloride, the smaller parcel was assigned a different identification, Tax Map Number 17–400–08–04. It is unclear exactly what precipitated the mistake in this case. The zoning classifications of the neighboring parcels in the area varied, however, so it could not be assumed that all of the property in the area held the same classification.

■■■ The fact that the error was made by Brown, the Zoning Administrator, rather than another County official, does not negate the fundamental principle recognized in *Quail Hill* that no action will generally lie for a misrepresentation as to a matter of law. *Quail Hill,* 387 S.C. at 241, 692 S.E.2d at 509. All individuals are presumed to know the law, including the nature and extent of a government official's authority, and they are charged with the knowledge that an ordinance may be changed only through compliance with proper procedures. *Meyer v. Santema,* 559 N.W.2d 251 (S.D.1997). In *Meyer,* the

court observed that the "City's misrepresentations concerned *interpretation and implementation of a zoning ordinance,* which is a matter of law—misrepresentations of law are not actionable." *Id.* at 255 (emphasis added).

Although Brown opined that the property was M–2, he stated he was referring to a tax map, not the Official Zoning Map, and only the Official Zoning Map and the County ordinances contain the controlling property zoning classifications. *See* Richland County, S.C., Code § 26–33 (2003) ("[T]he official copy of the zoning map maintained in the office of the zoning administrator plus official records of the clerk of court regarding actions of the county council to amend district boundaries shall constitute the only official description of the location of zoning district boundaries, and persons having recourse to this ordinance for any purpose are hereby so notified.").

Further, although Brown stated the "tax map" had been "amended" to reflect M–2 zoning, only County Council can enact legislation to change a parcel's legal zoning classification in compliance with the procedures outlined in the Richland County Code, and such amendments are thereafter officially recorded and reflected on the Official Zoning Map. Brown, as the Zoning Administrator, did not have the authority to "amend" the Official Zoning Map or an ordinance. Rather, only County Council can perform this legislative act. *See id.* § 26–401 ("Requests for amendments shall be submitted in writing to the zoning administrator whose duty it shall be to present such amendment requests to the planning commission for review and to the county council for determination."). In this case, Brown was not authorized to amend the property's zoning classification and since no Official Zoning Map ever indicated the property was zoned anything but RU, Carolina Chloride could not rely upon Brown's representation as to this matter of law.

In *Northernaire Productions, Inc. v. Crow Wing County,* 309 Minn. 386, 244 N.W.2d 279 (1976), the Supreme Court of Minnesota held county officials are not liable in tort for negligently misrepresenting the legal requirements of their zoning ordinance to members of the public who rely on that misrepresentation. The plaintiffs, promoters of a rock con-

cert, sued for damages after they were erroneously advised of the zoning requirements for the area where they had planned to stage a concert. *Id.* at 280. The court stated "the alleged misrepresentation by the county officials in the case at bar concerned interpretation of the zoning ordinance, a matter of law." *Id.* at 281. The court stated the general rule is "misrepresentation of law is not actionable." *Id.*

The court noted its holding was partly "based on considerations of public policy." *Id.* at 282. There was no dispute that the alleged misrepresentations were made in a good-faith effort to respond to the plaintiffs' inquiries, and were concededly made without malice or an intent to deceive. *Id.* The court observed: "To subject county officials to the prospect of liability for innocent misrepresentation would discourage their participation in local government or inhibit them from discharging responsibilities inherent in their offices. Their reluctance to express opinions would frustrate dialogue which is indispensable to the ongoing operation of government." *Id.*

We agree with this reasoning. To hold otherwise would impose an impossible burden on the County (and taxpayers) to act, in effect, as an insurer of all information given by County employees under all circumstances. Due to the sheer volume of inquiries processed by the County, it would be unreasonable to impose a requirement of 100% fail-proof accuracy under the threat of tort liability on matters of law.[2]

Although it is certainly unfortunate that a mistake occurred in this case, Carolina Chloride had no legal right to rely solely upon the representations of County personnel and should have consulted the official record to determine the legal zoning classification of its property. Carolina Chloride's owner and its broker are both experienced in business matters, but it appears that neither Morgan nor his broker personally inspected the County's official records prior to making a sizable investment in developing the property. Despite Carolina Chloride's contention that it is a distinguishable allegation, we find its assertion that the County failed to properly maintain its zoning records merely restates the same essential accusation regarding the erroneous information it was given regard-

---

**2.** We offer no opinion on the County's potential liability for misrepresentations not involving a statement of law.

ing the property's legal zoning classification. Accordingly, we hold the trial judge's grant of a directed verdict to the County was proper and we reverse the determination of the Court of Appeals as to these two claims.

We take this opportunity, however, to encourage the County to make every reasonable effort to reduce the chances of such errors occurring in the future. For example, routinely informing inquiring property owners that the legal status of the property may be definitively ascertained only through a check of the public records and implementing a system of having more than one employee check the zoning status would all serve to heighten the public's awareness that zoning is a legal matter than cannot be altered by the representations of County employees. Although for public policy reasons the County is not held liable for every innocent error or mistake made by its employees, the County should make every reasonable effort to minimize the chances of such mistakes occurring, which will benefit both the public and the County.

### (2) Additional Grounds for Directed Verdict

The County further argues a directed verdict is appropriate on the claims for negligence and negligent misrepresentation based on Carolina Chloride's alleged failure to exhaust its administrative remedies and the application of immunity under the South Carolina Tort Claims Act. Because we have found these claims fail as a matter of law for the reasons stated above, we need not reach the County's remaining arguments.

### B. CAROLINA CHLORIDE'S APPEAL

The Court has also granted a cross-petition for a writ of certiorari filed by Carolina Chloride, which raises two issues.

### (1) Inverse Condemnation Claim

Carolina Chloride first argues the Court of Appeals erred in upholding the trial judge's directed verdict for the County on its inverse condemnation claim. Carolina Chloride argues Hicks's 2003 letter constitutes "affirmative conduct" that was not a simple mistake, but "a ruling by the County

that reversed the existing M–2 zoning designation," causing it harm.

Inverse condemnation is a cause of action by a property owner against a governmental entity to recover the value of property that has been effectively "taken" by the governmental entity, although not through the process of eminent domain. *Kiriakides v. Sch. Dist. of Greenville County*, 382 S.C. 8, 675 S.E.2d 439 (2009). "An inverse condemnation may result from the government's physical appropriation of private property, or it may result from government-imposed limitations on the use of private property." *Byrd v. City of Hartsville*, 365 S.C. 650, 656, 620 S.E.2d 76, 79 (2005).

The second method, regulatory inverse condemnation, requires proof of two elements: (1) affirmative conduct, and (2) a taking. *Id.* at 657, 620 S.E.2d at 80. When the claim stems from an allegation of a temporary denial of less than all economically viable use of the property, the central inquiry is whether the delay ever became unreasonable. *Id.* at 660, 620 S.E.2d at 81. "Until regulatory delay becomes unreasonable, there is no taking" *Id.*

Two circumstances are important: (1) the economic impact on the claimant, especially the extent to which the governmental entity has interfered with the claimant's investment-backed expectations, and (2) the character of the governmental action. *Id.* at 659, 620 S.E.2d at 80.

"To prevail in such an action, a plaintiff must prove 'an affirmative, aggressive, and positive act' by the government entity that caused the alleged damage to the plaintiff's property." *WRB Ltd. P'ship v. County of Lexington*, 369 S.C. 30, 32, 630 S.E.2d 479, 481 (2006) (citations omitted).

"A landowner has the burden of proving damages for the taking of the landowner's property, whether through condemnation proceedings or by inverse condemnation." *Kiriakides*, 382 S.C. at 14, 675 S.E.2d at 442. "Not all damages that are suffered by a private property owner at the hands of the governmental agency are compensable." *Id.* "The property itself must suffer some diminution in substance, or it must be rendered intrinsically less valuable." *Id.*

"[I]n an inverse condemnation case, the trial judge will determine whether a claim has been established; the issue of compensation may then be submitted to a jury at either party's request." *Id.* (quoting *Cobb v. South Carolina Dep't of Transp.*, 365 S.C. 360, 365, 618 S.E.2d 299, 301 (2005)).

In the current appeal, the trial judge noted that Carolina Chloride did not appeal from Hicks's decision, and he did not believe there could be a claim for a temporary regulatory taking where the event complained of was never appealed. The trial judge further stated that he believed the case of *Byrd v. City of Hartsville*, 365 S.C. 650, 620 S.E.2d 76 (2005) was controlling and that there had been no regulatory taking.

Upon review, the Court of Appeals found the trial judge properly granted a directed verdict for the County on the inverse condemnation claim. *Carolina Chloride*, 382 S.C. at 654, 677 S.E.2d at 903. The Court of Appeals found the only time frame in which an alleged taking could have occurred would have been between February 13, 2003, the date of the County's letter, and November 4, 2003, when the County amended the property's zoning to M-2, because at all other times Carolina Chloride used the property in compliance with M-2 zoning and without any governmental interference. *Id.* at 654, 677 S.E.2d at 902.

The Court of Appeals further observed that "[t]he sole evidence Carolina Chloride presents of governmental action constituting an affirmative act is Hicks' alleged mistaken assessment of the zoning ordinances applicable to Carolina Chloride's property." *Id.* The Court of Appeals determined a mistaken assessment of the zoning ordinances applicable to Carolina Chloride's property was not an "affirmative, aggressive, positive act" that damaged Carolina Chloride's property. *Id.* (citing *WRB Ltd. P'ship v. County of Lexington*, 369 S.C. 30, 630 S.E.2d 479 (2006)).

We agree the trial judge's grant of a directed verdict on the inverse condemnation should be affirmed for several reasons.

If the trial judge is deemed to have alternatively ruled Carolina Chloride failed to exhaust its administrative remedies, this ruling, right or wrong, would require affirmance as Carolina Chloride did not timely dispute this alternative ground. *See, e.g. Richland County v. Palmetto Cablevision*,

261 S.C. 222, 199 S.E.2d 168 (1973) (stating an unchallenged ruling, right or wrong, becomes the law of the case).

As to the finding that there was no regulatory taking, this is amply supported by the record. There is no evidence that Hicks erred in advising Carolina Chloride in 2003 that its property was zoned RU. There is no Official Zoning Map or any ordinance in the record indicating that the property was ever legally zoned anything other than RU prior to County Council officially rezoning the property to M–2 in late 2003. Further, the County's notification in 2003 that the property was zoned RU, and the County's requirement that Carolina Chloride follow authorized procedures in having the property rezoned is a proper exercise of its governmental authority. To the extent any other mistakes were made by County personnel, such mistakes do not constitute "an affirmative, positive, aggressive act" such as would support the finding of a taking. *Cf. Collins v. City of Greenville*, 233 S.C. 506, 105 S.E.2d 704 (1958) (finding no positive act where the city, in attempting to unclog a sewer line, made a mistake that caused an overflow and inadvertently damaged the plaintiff's property).

We agree with the Court of Appeals that Carolina Chloride used its property as if it were zoned M–2 at all times. Carolina Chloride itself delayed for six months in applying for a zoning change after Hicks advised it to do so. Once Carolina Chloride submitted its application, it was quickly processed and approved in three months as Hicks had estimated in his February 2003 letter. During this time, all of Carolina Chloride's existing operations were allowed to continue as if it had an M–2 designation without interference.

Normal delays in obtaining building permits, changes in zoning ordinances, variances, and the like have long been considered permissible exercises of police power and a person "is not entitled to compensation merely because he had to obtain a zoning change to develop his property." *Byrd v. City of Hartsville*, 365 S.C. 650, 660, 620 S.E.2d 76, 81 (2005).

In *Byrd*, this Court held an eleven-month delay in acting on a property owner's petition to rezone a portion of his property did not effect a taking as the delay did not affect the property owner's ability to continue using the land and did not cause a

disproportionate economic impact upon the owner even though he alleged he had wanted to sell a portion of the property. This Court stated continuation of the existing use of the property is the property owner's "primary expectation" when considering an owner's investment-backed expectations for the property. *Id.* at 662, 620 S.E.2d at 82 (citing *Penn Cent. Transp. Co. v. City of N.Y.*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978)). We find *Byrd* is controlling here and that the trial judge and the Court of Appeals properly concluded Carolina Chloride's claim for inverse condemnation fails as a matter of law.

### (2) Exclusion of Deposition

 Carolina Chloride next argues the Court of Appeals erred in upholding the exclusion of Terry Brown's deposition.

At trial, Carolina Chloride wished to introduce the deposition it had taken of Brown, who was formerly the County's Zoning Administrator. At the time of his deposition, however, Brown had left this position and become a member of the Board of Adjustment.[3] The trial judge excluded the deposition based on the County's objection pursuant to Rule 32(a)(2), SCRCP, which provides in relevant part that the deposition "of anyone who at the time of taking the deposition was an officer, director, or managing agent" of a governmental agency, corporation, partnership, or association that is a party may be used for any purpose by an adverse party. The County maintained the deposition was not admissible because Brown did not fall within the scope of the rule.

The trial judge rejected Carolina Chloride's only argument that Brown met the requirements of Rule 32(a)(2) because he was currently a member of the Board of Adjustment. The judge's ruling applied only to Brown's deposition testimony and did not prevent Brown from being called as a witness at trial.

---

**3.** *See* Richland County, S.C., Code § 26–602 (2003) (stating the Board of Adjustment decides appeals from any order, requirement, decision, or determination made by the Zoning Administrator in enforcing the Zoning Ordinance); *see also id.* § 26–601.1 (providing the Board of Adjustment shall be comprised of seven members appointed by County Council for a three-year term, and the board shall elect one of its members as chairman for a one-year term).

The Court of Appeals found no abuse of discretion, stating Carolina Chloride "did not lay any foundation as to why Brown's role on the Board qualifies under Rule 32(a)(2)." *Carolina Chloride*, 382 S.C. at 644, 677 S.E.2d at 897. The court observed Carolina Chloride could have attempted to demonstrate that Brown qualified as an unavailable witness under Rule 32(a)(3), SCRCP or, if Brown was available, he should have been called as a witness at trial. *Id.* The court did not reach Carolina Chloride's additional argument referencing Rule 801(d)(2), SCRE because it was not raised to and ruled upon by the trial judge and, therefore, was not preserved since an issue cannot be raised for the first time on appeal. *Id.* at 645 n. 4, 677 S.E.2d at 897 n. 4 (citing *Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998)).

Carolina Chloride now asserts the Court of Appeals erred in excluding the deposition because the County asked Carolina Chloride not to contact or have *ex parte* discussions with Brown, so it honored this request and took his deposition instead. Carolina Chloride contends the County treated Brown as its employee by making this request, citing Rule 3.4(f)(1) of the Rules of Professional Conduct, Rule 407, SCACR (observing a lawyer should not request a person other than a client to refrain from voluntarily giving relevant information unless the person is a relative, employee, or other agent of a client); therefore, Brown should be considered the County's employee for purposes of satisfying the requirements of Rule 32(a)(2), SCRCP.

Although we are deeply troubled by the County's seemingly inconsistent positions regarding this witness, Carolina Chloride's argument was not raised to and ruled upon by the trial judge so as to preserve it for review. *Wilder Corp.*, 330 S.C. at 76, 497 S.E.2d at 733. We note, however, that Carolina Chloride did proffer Brown's deposition for the record and it has failed to demonstrate any prejudice in its exclusion, in any event. *See generally Fields v. J. Haynes Waters Builders, Inc.*, 376 S.C. 545, 557, 658 S.E.2d 80, 86 (2008) ("[T]o warrant reversal based on the admission or exclusion of evidence, the appealing party must show both the error of the ruling and prejudice.").

## III. CONCLUSION

As to the County's appeal, we reverse the Court of Appeals and hold the trial judge properly granted a directed verdict to the County on the claims for negligence and negligent misrepresentation. As to Carolina Chloride's appeal, we affirm the Court of Appeals, which upheld the exclusion of Brown's deposition and the grant of a directed verdict to the County on the claim for inverse condemnation.

**AFFIRMED IN PART, REVERSED IN PART.**

TOAL, C.J., PLEICONES, KITTREDGE and HEARN, JJ., concur.