608 S.E.2d 134

Rose M. PACK and Joseph B. Pack, III as Co–
Personal Representatives of the Estate of
Tracy B. Pack, deceased, Appellants,

v.

ASSOCIATED MARINE INSTITUTES, INC.; Rimini Marine
Institute, Inc.; The South Carolina Department of Juvenile
Justice; Tyrone Smalls; Barney Gadson; Rodney Morrow;
Thaddeus Chestnut; and John Zeigler, Defendants, of whom
Associated Marine Institutes, Inc.; Rimini Marine Institute,
Inc.; Tyrone Smalls; Barney Gadson; Rodney Morrow;
Thaddeus Chestnut; and John Zeigler are the, Respondents.

No. 3907.

Court of Appeals of South Carolina.

Heard Sept. 15, 2004.
Decided Dec. 20, 2004.

William H. Johnson, of Manning, for Appellants.

Thomas C. Salane, of Columbia, for Respondents.

STILWELL, J.

Rose M. Pack and Joseph B. Pack, III, as co-personal representatives of the Estate of Tracy B. Pack (the Estate), appeal the circuit court's order granting partial summary judgment to Associated Marine Institutes, Inc. (AMI), Rimini Marine Institute, Inc. (RMI), and four Rimini employees. We affirm.

## FACTS AND PROCEDURAL HISTORY

In August 1999, juveniles Jon Smart and Stephen Hutto were in the custody of the South Carolina Department of

Juvenile Justice (DJJ). They boarded at RMI, a residential rehabilitation facility for juveniles in the custody of DJJ.[1]

Prior to Smart's placement at RMI, DJJ screened him under its eligibility guidelines, classified him as a non-violent offender, and determined he was fit for placement at RMI although Smart's DJJ record indicated he had a history of substance abuse that included becoming intoxicated from inhaling paint and gasoline fumes, a practice commonly called "huffing." Barney Gadson, RMI's Director of Operations, testified he had reviewed Smart's DJJ records, and was aware that Smart had a problem with becoming violent after huffing. Gadson and Smart's team leader, Robert McCray, tested Smart to determine if his purported huffing addiction was true by making gasoline accessible to him. After Smart attempted to steal the gas, he received counseling and RMI employees took precautions to restrict his access to fuel kept on campus. On August 11, 1999, Smart huffed gas he stole from a generator while on work furlough. When his counselor, Thaddeus Chestnut, confronted him about the odor of gasoline on his person, Smart denied huffing and claimed he smelled of gas from working on the generator.

The following day, Tracy Pack obtained permission from RMI to have Smart and Hutto leave the RMI campus to work at his chicken houses. Pack was a former employee of RMI who allowed juveniles from the Rimini facility to work off-campus with him at his family's nearby poultry farm and boat landing. Once there, Smart became intoxicated by huffing gasoline he had secretly funneled from Pack's truck. Smart subsequently bludgeoned Pack to death. Smart and Hutto then stole Pack's truck and went on a crime spree before police apprehended them.

The Estate brought survival and wrongful death actions against AMI and RMI, arguing AMI failed to properly monitor RMI. It further alleged that RMI was negligent in its supervision of Smart and Hutto, and should have discovered and warned Pack of the boys' violent propensities.

---

1. RMI operates the facility pursuant to a contract between its parent, AMI, and DJJ. RMI was responsible for the day-to-day operation of the facility. AMI is a charitable corporation organized under the laws of Florida specializing in the operation of residential and day programs for troubled youth.

AMI and RMI made a motion for partial summary judgment, arguing they were entitled to statutory limitations on liability under S.C.Code Ann. § 33–56–180 (Supp.2003), because both corporations qualified as charitable organizations. The circuit court agreed, and partially granted their motions.

The Estate then filed a complaint in United States District Court alleging DJJ, AMI, and RMI violated Tracy Pack's civil rights pursuant to 42 U.S.C. § 1983. It also amended its complaints in state court, adding nine RMI employees and DJJ as defendants.

The parties later agreed to voluntarily dismiss the federal action without prejudice. Consequently, the Estate reasserted its federal civil rights claims against all defendants in state court. Following discovery, the Estate voluntarily dismissed all claims against four of the employees.[2] The circuit court also granted DJJ's motion for summary judgment. The remaining defendants, including AMI, RMI and four RMI employees, each filed motions for summary judgment on all causes of action.

The circuit court denied summary judgment to AMI and RMI on the Estate's wrongful death and survival claims. However, it granted summary judgment in favor of individual RMI employees on both negligence claims, finding they were entitled to qualified immunity pursuant to S.C.Code Ann. § 33–56–180. The court also granted all defendants summary judgment on the Estate's federal civil rights cause of action, finding "that even if an unconstitutional 'custom or practice' can be shown by the [Estate] in this case, the 'deliberate indifference' standard cannot be met." To support its conclusion, the court relied on *White v. Chambliss*, 112 F.3d 731, 737 (4th Cir.1997), which held "[a] claim of deliberate indifference, unlike one of negligence, implies at a minimum that the defendants were plainly placed on notice of a danger and chose to ignore the danger notwithstanding the notice."

---

2. A fifth employee, Thaddeus Chestnut, was named as a defendant and was served by publication. We find no evidence in the record that Chestnut filed an answer or motion for summary judgment. The trial court's order granting summary judgment to "RMI Employees" does not refer to any specific individual. Therefore, Chestnut's status in this case is unclear to this court.

The Estate filed a motion to amend the judgment, requesting the trial court rule on its claim that application of the "state created danger" doctrine supported a finding RMI violated 42 U.S.C. § 1983. The circuit court denied the motion, finding the evidence failed to prove RMI created the danger that led to Tracy Pack's death. It also stated "[e]ven if the Court determined that Tracy Pack has a substantive due process right to be protected by the defendants, the absence of deliberate indifference prevents § 1983 from being an available remedy."

## STANDARD OF REVIEW

When we review an order granting summary judgment, the court of appeals applies the same standard that governs the circuit courts pursuant to Rule 56, SCRCP. Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Lanham v. Blue Cross & Blue Shield*, 349 S.C. 356, 361–62, 563 S.E.2d 331, 333 (2002). In making our determination whether any triable issues of fact exist, we will view the evidence and all reasonable inferences from it in the light most favorable to the non-moving party. *Id.*

## DISCUSSION

### I. Claims Against Individual RMI Employees

The Estate contends the circuit court erred by granting summary judgment in favor of individual RMI employees on its wrongful death and survival claims, arguing evidence in the record created numerous genuine issues of material fact whether four of the employees acted in a grossly negligent manner. We disagree.

S.C.Code Ann. § 33–56–180(A) (Supp.2003) states, in relevant part:

An action against the charitable organization pursuant to this section constitutes a complete bar to any recovery by the claimant, by reason of the same subject matter, against the employee of the charitable organization whose act or omission gave rise to the claim unless it is alleged and

proved in the action that the employee acted in a reckless, wilful, or grossly negligent manner[.]

Here, the circuit court's unappealed finding that AMI and RMI qualified as charitable organizations is the law of the case. *In re: Morrison,* 321 S.C. 370, 371, 468 S.E.2d 651, 653 (1996) (stating an unappealed ruling is the law of the case). Moreover, the Estate does not allege on appeal that RMI employees were either reckless or willful. Thus, pursuant to section 33–56–180(A), the Estate is statutorily barred from recovering against an individual RMI employee on its wrongful death and survival claims unless it can show the employee acted in a grossly negligent manner.

■ Section 33–56–180 does not define what it means to act in a grossly negligent manner. However, our supreme court has defined gross negligence in the context of liability by a government entity to mean

the intentional conscious failure to do something which it is incumbent upon one to do or the doing of a thing intentionally that one ought not to do. It is the failure to exercise slight care. Gross negligence has also been defined as a relative term, and means the absence of care that is necessary under the circumstances.

*Jinks v. Richland County,* 355 S.C. 341, 345, 585 S.E.2d 281, 283 (2003) (internal citations omitted).[3] "Additionally, while gross negligence ordinarily is a mixed question of law and fact when the evidence supports but one reasonable inference, the question becomes a matter of law for the court." *Etheredge v. Richland Sch. Dist. One,* 341 S.C. 307, 310, 534 S.E.2d 275, 277 (2000).

The Estate makes numerous allegations of gross negligence against individual RMI employees arguing evidence contained

---

**3.** The Estate argues each sentence of the *Jinks* standard is an independent definition of gross negligence. It also asserts this court's definition of gross negligence as "a conscious failure to exercise due care" in *Jackson v. S.C. Dep't of Corrs.,* 301 S.C. 125, 390 S.E.2d 467 (Ct.App. 1989) constitutes a fourth meaning to permit a finding of gross negligence even when there is evidence a defendant exercised slight care. We disagree and read the definition in *Jinks* as a single, comprehensive standard for proving gross negligence requiring a determination whether a defendant exercised at least slight care.

in the record creates genuine issues of material fact sufficient to overcome summary judgment. We disagree.

The trial court granted summary judgment after determining RMI employees acted with at least slight care in carrying out their duties. On appeal, the Estate's argument is essentially that the employees were grossly negligent because they failed to do more to address Smart's behavior problems or prevent Smart and Hutto from participating in off-campus work furloughs on Pack's farm. The fact that more might have been done does not negate a finding that RMI employees exercised at least slight care. *See Etheredge*, 341 S.C. at 311–12, 534 S.E.2d at 277–78 (holding that where defendant had no knowledge of animosity between students, and principal and security monitored hallways, the fact that school district might have done more did not negate the fact it exercised slight care for purposes of determining whether gross negligence exception to Tort Claims Act was applicable).

Viewing the evidence in the light most favorable to the Estate, we agree with the trial court's conclusion that individual RMI employees exercised at least slight care in their supervision and control of Smart and Hutto. As such, we conclude there are no genuine issues of material fact that would prevent the award of summary judgment.

## II. Federal Civil Rights Claims Against AMI and RMI

The Estate contends that AMI and RMI displayed deliberate indifference for Pack's safety, and thus the circuit court erred in granting summary judgment on its 42 U.S.C. § 1983 claims. We disagree.

An unappealed ruling of the circuit court determined that AMI and RMI qualify as state actors. Therefore, both corporations may be liable for violating Tracy Pack's civil rights if the Estate can show each had knowledge of an unconstitutional custom or practice, and failed, as a matter of specific intent or deliberate indifference, to correct or stop it. *See Spell v. McDaniel*, 824 F.2d 1380, 1391 (4th Cir.1987) (holding a municipality is at fault for allowing a widespread unconstitutional practice or custom to continue if (1) responsible policymakers have actual or constructive knowledge of its existence,

and (2) it fails thereafter, as a matter of specific intent or deliberate indifference, to correct or stop the practice).

To support its § 1983 claims against the corporations, the Estate reasserts essentially the same allegations it relied on as evidence of individual employees' gross negligence.[4] We note that even had the Estate proven individual RMI employees acted in a grossly negligent manner, they cannot predicate their 1983 claim on the employees' behavior alone. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 692–94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (holding a state actor cannot be held liable under Section 1983 on a respondeat superior theory). Unless the Estate can show AMI and RMI acted with deliberate indifference in monitoring Smart and permitting the work furloughs to continue and the practices made Pack's murder "almost bound to happen," its constitutional claim fails as a matter of law. *See Spell,* 824 F.2d at 1390 (holding a plaintiff must prove the failure to correct or stop the offending practice must make the specific violation "almost bound to happen, sooner or later" rather than merely "likely to happen in the long run" to sustain a section 1983 claim); *see also Jensen v. Conrad,* 570 F.Supp. 114, 122 (D.S.C.1983) ("In defining the concept of deliberate indifference, it is important to recognize that although it is closely associated with gross negligence, there is a significant distinction. In essence, gross negligence is the breach of reasonable standards of conduct posing obvious dangers to others while deliberate indifference involves a knowing lack of regard or concern for the safety of others.") (internal citation omitted).

RMI accepted Smart only after DJJ screened him under its eligibility guidelines, classified him as a non-violent offender, and determined he was fit for placement. RMI's staff monitored Smart's huffing addiction and took appropriate steps to counsel him and restrict his access to gasoline on campus. Prior to the murder, Smart and Hutto had participated in work furloughs without incident and had regularly worked

---

4. The contention is (1) the practice of permitting off-campus work furloughs without adequate supervision, (2) failure to train and instruct employees on the internal policy requiring supervision, and (3) failing to respond to knowledge of Smart's huffing addiction and his behavioral history, all directly resulted in the unconstitutional deprivation of Tracy Pack's right to life.

with Tracy Pack at the poultry farm. Although he later admitted to stealing gas and huffing while at the farm and boat landing, Smart acknowledged he did so secretly and lied to his counselors when questioned about the odor of gas on his person. On the day of his murder, Tracy Pack himself specifically requested Smart and Hutto for work furlough on his farm. Viewing the evidence in the light most favorable to the Estate, we cannot say AMI and RMI knowingly disregarded Tracy Pack's safety or that their decision to continue the practice of work furloughs made Pack's murder almost bound to happen. Absent a showing of such deliberate indifference, the Estate's section 1983 claims fail.

The Estate also raises section 1983 claims against RMI based on an alleged failure to train employees to follow an internal guideline governing the supervision of juveniles. Assuming the Estate's allegations of a failure to train are true, it still must show AMI and RMI acted with deliberate indifference to survive section 1983 scrutiny. Since we have determined the Estate failed to make such a showing, we find this argument unpersuasive.

■ Finally, the Estate contends a theory of liability referred to as the "state created danger" doctrine supports 1983 liability arguing AMI and RMI created the danger that led to Pack's death by not taking affirmative action to end off-campus work furloughs. The Estate urges us to adopt a four-part test created by the United States Court of Appeals for the Third Circuit, which is used to prove a due process violation under the doctrine. *See Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir.1996) (establishing a four-part test for proving a section 1983 claim under the "state created danger" doctrine). We decline to do so.

Our state supreme court has not adopted the four-part *Kneipp* test nor, insofar as we can tell, has it ever recognized or even discussed the "state created danger" doctrine in relation to a section 1983 action. We prefer, instead, to be guided by the analysis employed by the Fourth Circuit Court of Appeals in a case similar to *Kneipp* and to the one at bar. In addressing the issue of whether a plaintiff may claim liability under 42 U.S.C. § 1983 based on an affirmative duty

theory, the court, in *Pinder v. Johnson*, 54 F.3d 1169, 1174 (4th Cir.1995) recognized:

the Due Process Clause of the Fourteenth Amendment does not require governmental actors to affirmatively protect life, liberty, or property against intrusion by private third parties. Instead, the Due Process Clause works only as a negative prohibition on state action. 'Its purpose was to protect the people from the State, not to ensure that the State protected them from each other.'

To support its conclusion, the court quoted *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 196–97, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), wherein the Supreme Court of the United States held:

[i]f the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them. As a general matter, then, we conclude that a States failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.

The affirmative duty of protection rejected by the United States Supreme Court in *DeShaney* and the Fourth Circuit in *Pinder* is precisely the duty the Estate relies on in this case. The Estate argues RMI and AMI could have, and thus should have, acted to prevent Smart and Huttos crimes. However, *DeShaney* makes clear that no affirmative duty exists in these circumstances.

## CONCLUSION

Viewing the evidence in the light most favorable to the Estate, we find RMI employees exercised at least slight care in the performance of their duties and are entitled to qualified immunity from liability pursuant to S.C.Code Ann. section 33–56–180 (Supp.2003). Because the Estate failed to prove AMI and RMI acted with deliberate indifference in maintaining the practice of off-campus work furloughs, training their employees, and addressing Smart's huffing addiction, its federal civil rights claims predicated on those allegations must fail. Finally, we conclude AMI and RMI's alleged failure to protect Pack

against the violent acts of Smart and Hutto does not constitute a violation of the Due Process Clause. Therefore the circuit court's grant of summary judgment is

**AFFIRMED.**

BEATTY and SHORT, JJ., concur.