677 S.E.2d 892

RICHLAND COUNTY, Respondent,

v.

CAROLINA CHLORIDE, INC., Appellant.

No. 4462.

Court of Appeals of South Carolina.

Heard Oct. 9, 2008.

Decided Nov. 25, 2008.

Withdrawn, Substituted, and Refiled May 28, 2009.

Rehearing Denied May 28, 2009.

638

Edward D. Sullivan, Christian Stegmaier and Amy L. Neuschafer, all of Columbia, for appellants.

Andrew F. Lindermann, William H. Davidson III and Michael B. Wren, all of Columbia, for respondent.

PIEPER, J.:

Carolina Chloride, Inc. appeals a directed verdict involving the zoning of real property in Richland County. We now withdraw our previous opinion from publication and substitute this revised opinion.[1] We affirm as modified in part, and reverse and remand in part.

## FACTS

In November of 1996, Carolina Chloride purchased 7.67 acres of land in Richland County from IBM for $85,000. Prior to the purchase, Carolina Chloride's realtor contacted the Richland County Planning and Zoning Department ("County") to inquire about the zoning of the IBM property. Carolina Chloride required M–2 zoning for heavy industry because it planned to use the property for storing and distributing calcium chloride, a nonhazardous chemical used for ice or dust control on roads and for treating drinking water. In response to the inquiry, County allegedly informed the realtor of the property's M–2 zoning designation.[2]

The month after purchase of the property, Carolina Chloride's president, Robert Morgan ("Morgan"), went to County seeking a building permit. The zoning administrator, Terry Brown, told Morgan he believed the County zoned the property M–2, but there was a question about the tax map. The following day, the zoning administrator wrote Morgan a letter confirming County zoned the property M–2.

Over the ensuing six years, Carolina Chloride invested more than four hundred thousand dollars to improve the property, including building a mini-warehouse business. In order to

---

1. After filing the petition for rehearing, the parties requested this court delay its decision on the petition for the last few months.

2. Carolina Chloride's realtor could not recall who told him of the property's M–2 zoning.

build and maintain the businesses on the property, Carolina Chloride sought multiple licenses, certificates, and permits from County. Either the zoning administrator or other authorized County employees approved all such requests with each reflecting M-2 zoning.

In 2002, Morgan began negotiating the sale of the business with Allen, Johnette and Luke Watson ("the Watsons"). In pursuit of Carolina Chloride's purchase, the Watsons entered discussions with a bank to obtain financing, reviewed Carolina Chloride's financial records, and created a business plan for their intended expansion of the company. After continued discussions, Morgan agreed to sell Carolina Chloride and all its assets for 1.1 million dollars; however, Morgan and the Watsons never reduced the agreement to writing.

Thereafter, Carolina Chloride and the Watsons contacted John W. Hicks ("Hicks"), County's employee authorized to inform citizens whether their intended property use conformed to applicable zoning ordinances. Carolina Chloride sought County's approval for the Watsons' planned expansion of Carolina Chloride's property. On February 13, 2003, Hicks advised Carolina Chloride the property was zoned rural (RU). Hicks further advised that the current use of the property did not conform to the zoning ordinances; therefore, County would not permit any future expansion of the property. Hicks did state Carolina Chloride could continue its nonconforming use and could petition the Planning Commission to amend the zoning map to reflect M-2 zoning. As a result, the Watsons decided they did not want to purchase Carolina Chloride alleging RU zoning "totally killed the sale."

In August of 2003, Carolina Chloride petitioned to change the property's zoning from RU to M-2. On November 4, 2003, Richland County Council approved the request and amended the zoning map. Carolina Chloride subsequently filed suit against County alleging multiple causes of action associated with the unsuccessful sale of Carolina Chloride's property.

At trial, County denied all claims and asserted defenses under the South Carolina Tort Claims Act. During trial, the court refused to allow Carolina Chloride to read sections of Terry Brown's deposition to the jury because Terry Brown

was no longer the zoning administrator. At the end of Carolina Chloride's case-in-chief, the trial court granted County's motion for directed verdict on all causes of action. Carolina Chloride filed a motion to reconsider, which the trial court denied. Carolina Chloride now appeals.[3]

## ISSUES

I. Did the trial court err in excluding the testimony of the former zoning administrator?

II. Did the trial court err in finding there was no right to rely regarding the constructive fraud claim?

III. Did the trial court err as a matter of law in finding Richland County did not owe a duty to Carolina Chloride?

IV. Did the trial court err as a matter of law in finding the Tort Claims Act provided Richland County with immunity?

V. Did the trial court err in finding no evidence of gross negligence by Richland County?

VI. Did the trial court err in ruling as a matter of law there was no governmental taking by Richland County?

VII. Did the trial court err in ruling as a matter of law there was no deprivation of substantive due process by Richland County?

VIII. Did Carolina Chloride waive its governmental estoppel and promissory estoppel arguments?

## STANDARD OF REVIEW

When ruling on a motion for directed verdict, appellate courts apply the same standard as the trial court viewing evidence and all reasonable inferences in the light most favorable to the non-moving party. *Gadson ex rel. Gadson v. ECO*

---

3. Prior to oral arguments, County filed a motion with this court to strike materials Carolina Chloride designated for inclusion in the record on appeal, including the depositions of Terry Brown, Carl Gosline, and Geonard Price. This court denied the motion stating County was entitled to argue in its appellate brief whether the contested items should be considered on appeal.

*Servs. of South Carolina, Inc.,* 374 S.C. 171, 175–76, 648 S.E.2d 585, 588 (2007). A court should deny a motion for directed verdict "when the evidence yields more than one inference or its inference is in doubt." *Sabb v. South Carolina State Univ.,* 350 S.C. 416, 427, 567 S.E.2d 231, 236 (2002). This court will reverse only when there is no evidence to support the ruling or when the ruling is controlled by an error of law. *Law v. South Carolina Dep't of Corr.,* 368 S.C. 424, 434–35, 629 S.E.2d 642, 648 (2006).

## I. Deposition Testimony

■■ The admission of evidence is within the sound discretion of the trial court. *Gamble v. Int'l Paper Realty Corp. of South Carolina,* 323 S.C. 367, 373, 474 S.E.2d 438, 442 (1996). The exclusion of evidence will not be reversed on appeal absent an abuse of discretion. *Id.*

The trial court prohibited Carolina Chloride from reading excerpts of the deposition of Terry Brown (the former zoning administrator) at trial based on Rule 32(a)(2), SCRCP. The rule provides, "[t]he deposition of a party or of anyone who at the time of taking the deposition was an officer, director, or managing agent . . . may be used by an adverse party for any purpose." Rule 32(a)(2), SCRCP.

■■ Carolina Chloride argues Brown qualified as an officer, director, or managing agent under Rule 32(a)(2), SCRCP. While Brown was no longer the zoning administrator for County when deposed, Carolina Chloride asserts he met the requirements of Rule 32(a)(2), SCRCP, as a current member of the Zoning Board of Adjustment. Carolina Chloride, however, has not demonstrated the trial court abused its discretion by excluding Brown's deposition testimony. Furthermore, Brown's current status as a member of the Zoning Board of Adjustment, in and of itself, does not require admission of the deposition under Rule 32(a)(2), SCRCP. Carolina Chloride did not lay any foundation as to why Brown's role on the Board qualifies under Rule 32(a)(2). If not admissible under Rule 32(a)(2), Carolina Chloride needed to demonstrate Brown was unavailable pursuant to Rule 32(a)(3), SCRCP, or alternatively, if Brown was available, Carolina Chloride should have called him as a witness at trial. Indeed, Carolina

Chloride opined at trial that the application of Rule 32(a)(2), SCRCP, to the admissibility of Brown's deposition was "a weak argument." Consequently, the trial court did not abuse its discretion in excluding Brown's deposition at trial in the absence of the requisite foundation.[4]

## II. Constructive Fraud and Right to Rely

■ Carolina Chloride argues the trial court erred in dismissing the constructive fraud claim because a right to rely exists when there is no evidence the government employee is acting outside the scope of his authority.

■ To prove constructive fraud, all elements of actual fraud except the element of intent must be established. *Armstrong v. Collins*, 366 S.C. 204, 219, 621 S.E.2d 368, 375 (Ct.App.2005). To sustain a claim for fraud, the following elements must be demonstrated "by clear, cogent, and convincing evidence: (1) a representation of fact; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of the falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury." *Schnellmann v. Roettger*, 373 S.C. 379, 382, 645 S.E.2d 239, 241 (2007). "Actual fraud is distinguished from constructive fraud by the presence or absence of the intent to deceive." *Armstrong*, 366 S.C. at 219, 621 S.E.2d at 375. "However, in a constructive fraud case, where there is no confidential or fiduciary relationship, and an arm's length transaction between mature, educated people is involved, there is no right to rely." *Id.* (internal quotations omitted).

■ Here, Carolina Chloride has failed to offer evidence demonstrating a confidential or fiduciary relationship arose between Carolina Chloride and County employees. "A confidential or fiduciary relationship exists when one imposes

4. While Carolina Chloride also references Rule 801(d)(2), SCRE in its brief on appeal, this argument was not made to the trial court and is not preserved for our review. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) (an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial court to be preserved for appellate review).

a special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard for the interests of the one imposing the confidence." *Hendricks v. Clemson Univ.*, 353 S.C. 449, 458, 578 S.E.2d 711, 715 (2003) (declining to find a fiduciary relationship between a student and an academic advisor). Carolina Chloride suggests a confidential or fiduciary relationship arose between Carolina Chloride and County merely based on the fact the zoning administrator had a one-on-one conversation with the owner of Carolina Chloride. *See Armstrong* 366 S.C. at 219, 621 S.E.2d at 375 ("A relationship must be more than casual to equal a fiduciary relationship."). Our courts have not recognized a confidential or fiduciary relationship between individuals and zoning administrators. Moreover, the imposition of fiduciary relationships generally has been reserved to special relationships or "to legal or business settings, often in which one person entrusts money to the other, such as with lawyers, brokers, corporate directors, and corporate promoters." *Hendricks*, 353 S.C. at 459, 578 S.E.2d at 716. Thus, the trial court did not err in dismissing Carolina Chlorides' constructive fraud claim as a matter of law.[5]

### III. Public Duty Rule

The trial court ruled as a matter of law County owed Carolina Chloride no "special duty," warranting a directed verdict on Carolina Chloride's negligence claims. Carolina Chloride asserts this ruling was in error because the public duty rule does not apply to its tort claims. We agree.

To establish liability in a negligence action, the claimant must show: (1) a duty of care owed by the defendant to the plaintiff; (2) breach of that duty; and (3) damages resulting from the breach. *Bishop v. South Carolina Dep't of Mental Health*, 331 S.C. 79, 88, 502 S.E.2d 78, 82 (1998). Statutes, contractual relationships, property interests, and other special circumstances may give rise to an affirmative legal duty to act. *Madison ex rel. Bryant v. Babcock Ctr., Inc.*, 371 S.C. 123, 136, 638 S.E.2d 650, 656–57 (2006). "When,

---

**5.** This court may affirm the trial court based on any ground found in the record. *I'On, LLC v. Town of Mount Pleasant*, 338 S.C. 406, 418, 526 S.E.2d 716, 722 (2000).

and only when, the plaintiff relies upon a statute as creating the duty does a doctrine known as the 'public duty rule' come into play." *Arthurs ex rel. Estate of Munn v. Aiken County,* 346 S.C. 97, 103, 551 S.E.2d 579, 582 (2001).

In *Arthurs,* our state's supreme court analyzed whether the Tort Claims Act and the public duty rule were incompatible. *Id.* at 102, 551 S.E.2d at 581–82. While the court did confirm the viability of the public duty rule, the court clarified what types of situations could give rise to the rule. *Id.* at 105, 551 S.E.2d at 583. Accordingly, only when the plaintiff relies upon a statute as creating the duty does the public duty rule come into play. *Id.* at 103, 551 S.E.2d at 582. In other words, "where the duty relied upon is based upon the common law . . . then the existence of that duty is analyzed as it would be were the defendant a private entity." *Trousdell v. Cannon,* 351 S.C. 636, 641, 572 S.E.2d 264, 266–67 (2002) (analyzing the implications of the holding in *Arthurs*) (internal quotations omitted).

Here, Carolina Chloride asserts a negligence claim based upon the common law duty to exercise reasonable care. Specifically, Carolina Chloride argues County breached its duty of reasonable care in maintaining the zoning records. Carolina Chloride does not base its negligence claims on any statutory duty. Because Carolina Chloride relies on a common law duty and not a statutory duty, the trial court erred in applying the public duty rule. *See Trousdell,* 351 S.C. at 641, 572 S.E.2d at 267 (holding the public duty rule did not bar an alleged breach of the common law duty to exercise reasonable care).

Nevertheless, Carolina Chloride's claims may still be barred under an exception to the waiver of immunity enumerated in the South Carolina Tort Claims Act. *See Madison,* 371 S.C. 123, 142, 638 S.E.2d 650, 660 (stating "[w]hen a governmental entity owes a duty of care . . . under the common law and other elements of negligence are shown, the next step is to analyze the applicability of exceptions to the waiver of immunity . . . asserted by the governmental entity."). Accordingly, we now address whether the exceptions County raised bar Carolina Chloride's negligence claim.

## IV. Sovereign Immunity

Carolina Chloride asserts the trial court erred in finding County immune from liability under Section 15–78–40 of the South Carolina Tort Claims Act.

The South Carolina Tort Claims Act ("the Tort Claims Act" or "the Act") constitutes the exclusive civil remedy for any tort committed by a governmental employee while acting within the scope of the employee's official duties. S.C.Code Ann. § 15–78–200 (2005). The Tort Claims Act does not create causes of action, but removes the common law bar of governmental immunity. *Arthurs*, 346 S.C. at 105, 551 S.E.2d at 583. The Act is a limited waiver of sovereign immunity. *Steinke v. South Carolina Dep't of Labor, Licensing, and Regulation*, 336 S.C. 373, 393, 520 S.E.2d 142, 152 (1999).

The trial court interpreted § 15–78–40 to require a private sector analogy for a governmental entity to be held liable under the Act. This section provides, "[t]he State, an agency, a political subdivision, and a governmental entity are liable for their torts in the same manner and to the same extent as a private individual under like circumstances, subject to the limitations upon liability and damages, and exemptions from liability and damages, contained herein." S.C.Code Ann. § 15–78–40 (2005).

Recently, this court reversed an order of summary judgment where the trial court, relying on § 15–78–40, determined the government could only be held liable under the Tort Claims Act if a private individual could be held liable for similar conduct. *Quail Hill, L.L.C. v. County of Richland*, 379 S.C. 314, 665 S.E.2d 194 (Ct.App.2008) cert. granted, (April 22, 2009). However, this decision did not hold our state's Tort Claims Act lacked a private analogy mandate; instead, this decision merely emphasized the summary judgment procedural posture of the case and the absence of state precedent supporting or opposing a private sector analogy requirement. Moreover, *Quail Hill* expressly acknowledged persuasive federal authority supporting the trial court's interpretation of § 15–78–40. 379 S.C. at 322, 665 S.E.2d at 198.

In *United States v. Olson*, 546 U.S. 43, 126 S.Ct. 510, 163 L.Ed.2d 306 (2005), the United States Supreme Court analyzed a provision of the Federal Tort Claims Act similar to § 15–78–40. The federal provision allows tort actions against the United States government "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The Court noted the words, " 'like circumstances' do not restrict a court's inquiry to the same circumstances, but require it to look further afield." *Olson*, 546 U.S. at 46, 126 S.Ct. 510 (internal citations omitted). The Court suggested a further inquiry to determine whether an analogous situation could exist in which a private individual could be found liable for the same conduct. *Id.* at 47, 126 S.Ct. 510. In essence, the Court concluded if a private citizen could be held liable for negligently performing a task, then the government could be held liable for negligently performing a similar task.

Here, we need not resolve the private analogy question. Carolina Chloride argues County negligently maintained its zoning records resulting in Carolina Chloride's injury. Even if a private analogy is required, this claim is analogous, for example, to allegations of negligence against a private hospital or private school for negligently maintaining an individual's records. An analogy may be present where, as a result of negligently maintaining a patient's medical records, a hospital gives a patient his or her wrong blood type causing the patient harm. Similarly, an analogous situation may exist where a private school sends the wrong transcript to a former student's potential employer and, as a direct result, the employer does not hire the former student. In both instances, the private entities could be held liable for negligently maintaining an individual's records and thereby causing the individual's injury. Therefore, even if required, a private individual analogy does exist where a private individual or private entity could be held liable for similar conduct as alleged herein. Accordingly, the trial court erred in granting directed verdict against Carolina Chloride based on the absence of a private sector analogy.

 In addition to finding Carolina Chloride's claims barred under § 15–78–40, the trial court alternatively found

§ 15–78–60(4) of the Tort Claims Act barred Carolina Chloride from relief. However, Carolina Chloride argues the trial court erred because this Court is bound by our recent *Quail Hill* decision. We agree.

Section 15–78–60 of the Tort Claims Act contains affirmative defenses exempting the government from liability. The governmental entity bears the burden of establishing an affirmative defense under § 15–78–60. *Pike v. South Carolina Dep't of Transp.*, 343 S.C. 224, 230, 540 S.E.2d 87, 90 (2000). The exceptions listed in § 15–78–60 should be liberally construed to limit liability. *Steinke*, 336 S.C. at 396, 520 S.E.2d at 154. Section 15–78–60(4) provides that the government is not liable for injuries resulting from: "adoption, enforcement, or compliance with any law or failure to adopt or enforce any law, whether valid or invalid, including, but not limited to, any charter, provision, ordinance, resolution, rule, regulation, or written policies." S.C.Code Ann. § 15–78–60(4) (2005).

County argues the trial court did not err because any alleged damage claimed by Carolina Chloride arose as a result of County's enforcement of the zoning ordinances for which § 15–78–60(4) specifically grants governmental immunity. However, Carolina Chloride asserts its claims did not emanate from the County's enforcement of local ordinances. In support of this assertion, Carolina Chloride argues the "mistake" or injuries in this case are directly on point with the facts considered in *Quail Hill.*[6]

In *Quail Hill*, the petitioner purchased over seventy acres of land after a Richland County Planning Department staff member mistakenly advised him the land was zoned for his intended use. *Quail Hill*, 379 S.C. at 317, 665 S.E.2d at 195. After the petitioner purchased the property, another staff member informed him the property had a different zoning designation and he could not develop the land as he had intended. *Id.* At trial and on appeal, Richland County asserted § 15–78–60(4) as an affirmative defense arguing it was

---

6. Carolina Chloride supplemented the record pursuant to Rule 208(b)(7), SCACR, requesting the Court consider the *Quail Hill* decision. We respectfully note *Quail Hill* was not available to the trial court at the time of its decision.

immune from liability for the incorrect zoning assessment because appellant's claims arose as a result of the enforcement of local zoning ordinances. *Id.* This court reversed summary judgment in favor of appellant opining the claims asserted were not connected to the enforcement of the zoning ordinance, but arose as a result of a Richland County staff member's mistaken advice to appellant. *Id.* Therefore, this court concluded Richland County was not immune from liability under § 15–78–60(4). *Id.*

Here, Carolina Chloride asserts County's alleged mistaken zoning assessment resulted in the loss of a sale of real property and an associated business. Viewing the facts in the light most favorable to Carolina Chloride, the alleged mistake purportedly occurred on February 13, 2003, when John Hicks, the employee duly authorized to inform citizens whether their property was appropriately zoned for their intended uses, informed Carolina Chloride the property at issue was zoned rural (RU) and was not zoned heavy industrial (M–2). Hicks made this determination in response to a proposal for the development of the property sent to County from the Watsons, the interested buyers. However, in the letter, Hicks rejected the Watsons' proposed plans because under RU zoning County could not permit the expansion of "the current . . . structural area."

Appellants in this case and in *Quail Hill* alleged a governmental entity negligently advised them of the zoning designations applicable to their properties. In *Quail Hill*, the mistake arguably resulted in the purchase of property that would not have been purchased had Richland County accurately advised the purchaser. On the other hand, in the case at bar, the alleged mistake ostensibly prevented the sale of property that would have been sold but for County's authorized employee informing Carolina Chloride the property was zoned for rural use only. Regardless, both instances deal with tortious claims emanating from a governmental entity issuing allegedly mistaken advice to someone regarding applicable zoning ordinances. Accordingly, because we are bound by this court's precedent, the trial court erred in ruling as a matter of law that § 15–78–60(4) barred Carolina Chloride's tort claims.

In addition to dismissing Carolina Chloride's claims for negligence, gross negligence, and negligent misrepresenta-

tion on account of the Tort Claims Act, the trial court made a separate finding that the cause of action for negligent misrepresentation should also be dismissed on the ground Carolina Chloride could have acquired knowledge of the proper zoning designation from the public record. Carolina Chloride argues the trial court erred in this finding because Carolina Chloride did not have the ability to ascertain the true zoning designation from the public records. We agree.

We note when ruling on a motion for a directed verdict, all reasonable inferences are viewed in the light most favorable to the non-moving party. *Gadson*, 374 S.C. at 175–76, 648 S.E.2d at 588. Under the present facts, two different zoning department employees, including the zoning administrator, reached different conclusions as to the zoning designation of Carolina Chloride's property; therefore, it is difficult for this court to conclude, as a matter of law, Carolina Chloride could have ascertained the true zoning designation of the property merely by examining the public record on its own. Further, even assuming Carolina Chloride could have discovered the subject property's true zoning designation through the public records, generally, a question of fact exists as to whether reliance on a misrepresentation was reasonable although the falsity of the alleged misrepresentation could have been ascertained by examining public records. *See Slack v. James*, 364 S.C. 609, 615, 614 S.E.2d 636, 639 (2005) (holding a question of fact existed as to whether real estate purchasers' reliance on a misrepresentation was reasonable when the falsity could have been discovered by examining public records). Thus, we find the trial court erred in dismissing the negligent misrepresentation claim as a matter of law at the directed verdict stage of the case.

### V. Gross Negligence

Notwithstanding our determination concerning sovereign immunity, County argues the trial court properly dismissed the gross negligence claim because Carolina Chloride offered no evidence supporting this claim. We agree.

Gross negligence is the failure to exercise slight care. *Jinks v. Richland County*, 355 S.C. 341, 345, 585 S.E.2d 281, 283 (2003). It also has been defined as a relative term and means the absence of care that is necessary under the circum-

stances. *Id.* In determining whether a directed verdict was proper, this court must construe inferences arising from the evidence in the light most favorable to the nonmoving party. *Gadson,* 374 S.C. at 175–76, 648 S.E.2d at 588.

In support of its gross negligence claim, Carolina Chloride references depositions not presented at trial as replete with evidence of gross negligence. "We are confined to the record in deciding issues on appeal." *Timms v. Timms,* 286 S.C. 291, 294, 333 S.E.2d 74, 75 (Ct.App.1985) (refusing to review evidence of insurance coverage outside the record on appeal). As previously indicated, the trial court did not abuse its discretion in excluding Brown's deposition in the absence of the requisite foundation; therefore, it was not part of the record. Additionally, Carolina Chloride did not attempt to include the Gosline or Price depositions in the record during trial and did not request that the record remain open in order to supplement the record. Consequently, these depositions were not in evidence and will not be considered on appeal.

Taking the evidence in the light most favorable to Carolina Chloride, the only evidence demonstrating County failed to exercise slight care was in Hicks' mistaken zoning designation of the property at issue. The presence of a mistake alone, however, is not sufficient evidence to conclude County failed to exercise slight care. Furthermore, the February 13, 2003, letter did state Hicks conferred with County's legal department prior to making determinations about the subject property suggesting Hicks, and therefore County, did exercise at least slight care. Absent evidence to the contrary, the only reasonable inference to be drawn from these facts is County, at a minimum, exercised slight care. *See Pack v. Associated Marine Insts., Inc.,* 362 S.C. 239, 246, 608 S.E.2d 134, 138 (Ct.App.2004) (holding no genuine issues of material fact existed for gross negligence claim where employees at the very least exercised slight care). Accordingly, the trial court did not err in granting a directed verdict in favor of County on the gross negligence claim.

## VI. Inverse Condemnation

Carolina Chloride further alleges the trial court erred in granting a directed verdict in favor of County on its inverse condemnation claim. We disagree.

"An inverse condemnation may result from the government's physical appropriation of private property, or it may result from government-imposed limitations on the use of private property." *Byrd v. City of Hartsville*, 365 S.C. 650, 656, 620 S.E.2d 76, 79 (2005). In essence, inverse condemnation is a governmental taking absent an eminent domain proceeding. *Id.* Successful inverse condemnation actions require a plaintiff to establish the government committed an affirmative, aggressive, and positive act causing damage to the plaintiff's property. *WRB Ltd. P'ship v. County of Lexington*, 369 S.C. 30, 32, 630 S.E.2d 479, 481 (2006).

The only time frame in which the alleged taking could have occurred would have been after County's February 13, 2003 letter. Prior to this event, Carolina Chloride used the property in compliance with M–2 zoning and absent any alleged governmental interference. Furthermore, Carolina Chloride cannot allege a taking subsequent to County amending the property's zoning to M–2 on November 4, 2003, because M–2 zoning allowed all of Carolina Chloride's and the Watsons' intended uses. As such, the only taking, if any, occurred between February 13 and November 4, 2003.

The sole evidence Carolina Chloride presents of governmental action constituting an affirmative act is Hicks' alleged mistaken assessment of the zoning ordinances applicable to Carolina Chloride's property. Even construing the facts under a favorable light analysis, this action is not an "affirmative, aggressive, positive act" damaging Carolina Chloride's property. *See WRB Ltd. P'ship*, 369 S.C. at 32, 630 S.E.2d at 481; *see also Quail Hill*, 379 S.C. at 322, 665 S.E.2d at 198 (finding no reported case holding "a mistake may rise to the level of an affirmative, aggressive, and positive act sufficient to constitute inverse condemnation."). Accordingly, the trial court properly granted a directed verdict in County's favor on the inverse condemnation claim.

## VII. Due Process

Carolina Chloride argues the trial court erred in finding County did not deprive Carolina Chloride of substantive due process. Substantive due process prohibits the gov-

ernment from depriving a person of life, liberty, or property for arbitrary reasons. *Worsley Cos., Inc. v. Town of Mount Pleasant,* 339 S.C. 51, 56, 528 S.E.2d 657, 660 (2000). "To establish a substantive due process claim, a plaintiff must show he possessed a constitutionally protected property interest that was deprived by state action so far beyond the limits of legitimate governmental action, no process could cure the deficiency." *Seabrook v. Knox,* 369 S.C. 191, 198, 631 S.E.2d 907, 911 (2006). To prove a denial of substantive due process, the plaintiff must also show "he was arbitrarily and capriciously deprived of a cognizable property interest rooted in state law." *Sloan v. South Carolina Bd. of Physical Therapy Exam'rs,* 370 S.C. 452, 483, 636 S.E.2d 598, 615 (2006).

At trial, County and Carolina Chloride appear to have confused substantive and procedural due process. However, Carolina Chloride only makes a substantive due process claim on appeal. Specifically, Carolina Chloride asserts deprivation of substantive due process because it claims County arbitrarily and capriciously changed the zoning of the property. Even assuming Carolina Chloride had a property interest in the zoning designation of its property, Carolina Chloride fails to proffer any evidence County actually changed the zoning of the property. Carolina Chloride merely evidences apparent confusion within the zoning department as to the zoning designation of the property arguably resulting in a mistake. Accordingly, the trial court did not err in granting a directed verdict in favor of County on the substantive due process claim.

## VIII. Governmental Estoppel and Promissory Estoppel

Issues cannot be raised for the first time on appeal, but must be raised to and ruled upon by the trial court to preserve it for appellate review. *Wilder Corp.,* 330 S.C. at 76, 497 S.E.2d at 733.

In Carolina Chloride's statement of the issues on appeal, it argues the trial court erred as a matter of law in finding no right to rely on government employees. While reliance is an element of several causes of action, Carolina Chloride avers a right to rely on County in the context of governmental estoppel. At trial, Carolina Chloride initially argued governmental estoppel and promissory estoppel. Nev-

ertheless, Carolina Chloride is barred on appeal from asserting governmental estoppel since it subsequently expressly waived this argument during trial. Additionally, Carolina Chloride waives promissory estoppel having failed to argue this issue in its initial appellate brief. While Carolina Chloride extensively briefs governmental estoppel and why the issues of reliance and reasonableness are questions best resolved by a jury, it specifically failed to address promissory estoppel as an issue on appeal. As such, neither of these issues are preserved for our review.

Accordingly, we affirm the trial court's decision directing a verdict as to constructive fraud, gross negligence, and inverse condemnation and reverse the trial court's decision directing a verdict in favor of County on Carolina Chloride's negligent misrepresentation and negligence claims and remand these two causes of action for trial.[7] The trial court's decision is **AFFIRMED AS MODIFIED IN PART, REVERSED AND REMANDED IN PART.**

SHORT and THOMAS, JJ., concur.

---

7. We note the dissent in *Quail Hill* focused on the fact the appellant therein had not dealt with the employee duly authorized to deal with zoning, i.e. the zoning administrator. Here, the facts are different. Carolina Chloride was interacting with the zoning administrator or a duly authorized employee throughout the time period involved. We also note, unlike *Quail Hill*, this decision does not reach the governmental estoppel argument because Carolina Chloride expressly waived the issue at trial.