# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The Estate of Jane Doe 202, by John Doe MM and John
Doe HS, each of whom holds power of attorney for Jane
Doe, Appellant,

v.

City of North Charleston; Leigh Anne McGowan,
individually, Charles Francis Wholleb, individually, and
Anthony M. Doxey, individually, Respondents.

Appellate Case No. 2017-002392

Appeal from Charleston County
Deadra L. Jefferson, Circuit Court Judge

Opinion No. 5821
Submitted May 15, 2020 – Filed May 19, 2021

## AFFIRMED

Gregg E. Meyers, of Mt. Pleasant, for Appellant.

Sandra J. Senn and Christopher Thomas Dorsel, both of
Senn Legal, LLC, of Charleston, for Respondents.

**HEWITT, J.:**  This is an appeal from a defense verdict in a case about whether
police officers violated the civil rights of "Jane Doe," a vulnerable adult.  The first
issue is whether the trial court erred in directing a verdict on Jane Doe's claim that
the officers created the risk Jane Doe would be harmed when they arrested Jane
Doe's adult daughter and left Jane Doe unattended in her home.  The other issue is

whether the trial court abused its discretion in handling the jury's second question about the charges for liability under 42 U.S.C. § 1983 (2018).

We affirm. We hold the trial court's grant of a directed verdict was correct, as the evidence did not rise to the level necessary for a claim that the police violated the constitution when they left Jane Doe at her house. On the jury charges, the trial court did not abuse its discretion when it repeated its earlier jury charges on liability and declined to repeat its instructions on damages.

**FACTS**

Daughter moved into Jane Doe's home in 2012 after it became clear Jane Doe was struggling to live alone. In 2013, Jane Doe was diagnosed with Alzheimer's disease and dementia.

The City of North Charleston Police Department dispatched police officers to Jane Doe's home one night in March 2014 after one of Jane Doe's neighbors reported a potential domestic disturbance. The neighbor reported seeing Daughter banging on the door and yelling for Jane Doe. The scene supposedly "seemed like a mess."

The first officer to arrive said no one was in Jane Doe's yard and no one answered knocks on the front and back doors. Other things were out of sorts as well: there was a pair of high heel shoes on the ground beside the driver's side door of the vehicle parked in the driveway, the vehicle's interior dome light was on, there were wine bottles in the back of the car, and a purse was on the ground in the backyard. The officer could not recall whether the vehicle's driver's side door was open, but the officer said the purse appeared to have fresh blood on it.

Other officers arrived, and they eventually determined an exigent entrance was necessary to check on the welfare of the woman who had reportedly been yelling outside the house. The officers did not have a warrant.

The officers met Jane Doe when they entered the house. They asked Jane Doe if she needed medical attention. All three officers reported that Jane Doe gave no indication in her response that she was suffering from dementia, was incapable of caring for herself, or could not be left alone. Jane Doe told the officers that Daughter was upstairs and led them to Daughter's room.

The parties disagree about what happened next. The officers said they found Daughter asleep in her bed but on top of her covers, fully dressed, and with a large

red wine stain down the front of her shirt. They also said Daughter woke up and spoke with the officers, who observed that she was unsteady on her feet and that she declined medical assistance. They claimed that when the two male officers left the bedroom to help gather Daughter's belongings, she began screaming at her mother and flailing her arms, and she struck the remaining female officer. For her part, Daughter claimed that a large figure woke her up in the middle of the night and flipped her out of the bed. Daughter stated she believed she was about to be raped and that she yelled for her mother to "stay out of it" while struggling with the figure.

Daughter was arrested for assaulting a police officer. Daughter claimed the officers refused her request that she be allowed to call someone to look after Jane Doe. The officers disputed this and said they did not recall Daughter ever telling them Jane Doe had dementia, could not be left alone, or could not care for herself. Daughter remained in jail overnight.

Jane Doe stayed in the home by herself until her brother came to check on her around lunchtime the next day, shortly after learning about the situation. He said that Jane Doe was "a wreck" but he was able to calm her down after fifteen or thirty minutes. After that, he left Jane Doe at the house so he could get Daughter out of jail. When Daughter returned home she discovered Jane Doe had been wearing a soiled diaper for some time.

The police came to the residence again two days later, after an unattended Jane Doe had a neighbor call police to report a suspicious vehicle in Jane Doe's driveway. The responding officer determined the vehicle was actually Daughter's vehicle. Once Jane Doe's family returned to the home, EMS was called and Jane Doe was transported to the hospital.

Jane Doe was initially taken to the hospital because she had increasing levels of confusion from being left alone on multiple occasions over a forty-eight hour period. While at the hospital, Jane Doe was also diagnosed with a urinary tract infection, and she stayed in the hospital for approximately two weeks.

### Litigation, Trial, and Directed Verdict

Jane Doe brought this lawsuit against the City of North Charleston and the three officers involved in Daughter's arrest. Her complaint alleged eleven different causes of action.

Three claims went to trial: deprivation of civil rights by North Charleston; invasion of privacy against North Charleston; and deprivation of civil rights by the responding officers. The civil rights claims were brought pursuant to 42 U.S.C. § 1983.

A key dispute at trial was whether the officers knew or should have known Jane Doe had diminished mental abilities and was unable to care for herself. Jane Doe's doctor testified the officers likely would not have recognized that Jane Doe had dementia unless they had been told. There was conflicting evidence on the point: as already noted, the officers disputed Daughter's testimony that she insisted she be allowed to contact someone to look after Jane Doe. A recording of the police dispatcher's conversation captured the dispatcher mentioning over the radio that Jane Doe had dementia. Still, the officer testified she did not hear the dispatcher mention dementia, explaining she may have been focused on assessing the scene at that moment rather than the radio.

At the close of all the evidence, the trial court directed a verdict on Jane Doe's "state-created danger" theory of liability. The court gave several reasons for its ruling, including that the officers could not be responsible for a danger (Jane Doe's dementia) that already existed. Jane Doe's claims against North Charleston proceeded to the jury, as did Jane Doe's claims that the individual officers violated her civil rights by making a warrantless entry into her home.

**Jury Charges**

The trial court gave the following charge on nominal damages during the lengthy jury instructions:

> Ladies and gentlemen[,] if you return a verdict for the plaintiff on a section 1983 claim but the plaintiff has failed to prove actual or compensatory damages for her claim[,] then you must award nominal damages of one dollar for that claim.
>
> A person whose federal rights were violated is entitled to a recognition of that violation even if he or she suffered no actual injury. Nominal damages such as one dollar are designed to acknowledge the depr[i]vation of a federal right even where you find no actual injury occurred.

Later, at the jury's request, the trial court gave a second instruction covering the elements of each cause of action. The court re-administered the entire section 1983 charge, including all of the charges on damages.

The jury submitted two additional notes to the trial court. The relevant part of the final note stated: "For there to be a violation of a civil right, 4th Amendment, the plaintiff must demonstrate through the preponderance of the evidence to be bodily harm or injury or mental i.e. damages[?]"

The trial court believed the jury was confusing damages as an element of liability under section 1983, insisting it was convinced the jury was asking whether Jane Doe needed to prove bodily harm. After discussion, the court decided to reinstruct the jury on the elements of a section 1983 claim, and not the various damages the jury could award for a valid claim, to avoid further confusion. Jane Doe asked the court to reinstruct the jury on nominal damages, but the court declined. The court said it would reinstruct the jury on damages if the jury asked to be reinstructed on damages.

The jury returned a verdict in favor of North Charleston and the officers. The trial court denied Jane Doe's motion for a new trial. This appeal followed.

## ISSUES

1. Did the trial court err by granting a directed verdict on the "state-created danger" portion of Jane Doe's civil rights claims?

2. Did the trial court err in declining to re-charge the jury on nominal damages?

## STATE-CREATED DANGER

Jane Doe argues the trial court erred in directing a verdict on her claim that officers violated her civil rights when they arrested Daughter, removed Daughter from the house, and left Jane Doe home by herself. She claims the officers knew or should have known Jane Doe suffered from dementia and that the officers' actions unconstitutionally created a danger or increased the risk Jane Doe would be harmed.

The state-created danger doctrine arises from a line of U.S. Supreme Court cases finding that the government does not have a duty to protect people from privately-inflicted harm. A key case is *DeShaney v. Winnebago County Department of Social Services*, where the guardian of a young child alleged a child protection agency failed to respond to multiple child abuse complaints over an extended time

period and should have prevented a father from severely beating his son. 489 U.S. 189, 191–94 (1989). *DeShaney* is commonly understood to turn on the reasoning that the constitution does not require the government to affirmatively protect citizens from private harms. Erwin Chemerinsky, *The State-Created Danger Doctrine*, 23 Touro L. Rev. 1, 2–3 (2007). Instead, the government has limited responsibility for a citizen's safety and well-being if the government takes a person into custody or when "the government is responsible for creating the danger." *Id.* at 3 (citing *DeShaney*, 489 U.S. at 199–200).

After *DeShaney*, courts around the country developed numerous "tests" for liability under the state-created danger doctrine. *See, e.g., Jones v. Reynolds*, 438 F.3d 685, 690 (6th Cir. 2006); *Hart v. City of Little Rock*, 432 F.3d 801, 805 (8th Cir. 2005); *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1152 (3d Cir. 1995). These cases tend to have tragic facts because recovering against the government requires a plaintiff to carry a heavy burden. Pursuant to *DeShaney* and its progeny, there is no due process violation unless a plaintiff shows a state actor engaged in reckless behavior or acted with deliberate indifference. *See Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986). Negligence and gross negligence are insufficient. *See Daniels*, 474 U.S. at 327.

This court previously employed the Fourth Circuit's formulation that due process does not require the government to affirmatively protect its citizen's rights; due process is a negative prohibition designed to protect people from the State rather than requiring the State to act. *See Pack v. Associated Marine Insts., Inc.*, 362 S.C. 239, 248–49, 608 S.E.2d 134, 139–140 (Ct. App. 2004) (quoting *Pinder v. Johnson*, 54 F.3d 1169, 1174 (4th Cir. 1995)). More recently, the Fourth Circuit explained a plaintiff must show "that the state actor created or increased the risk of private danger, and did so directly through affirmative acts, not merely through inaction or omission." *Doe v. Rosa*, 795 F.3d 429, 439 (4th Cir. 2015).[1]

Here, the trial court based its directed verdict, at least in part, on the fact that there was no evidence the officers' actions allowed a third party to harm Jane Doe. Although some jurisdictions require a third party "bad actor" to establish liability

---

[1] *Pinder* reads *DeShaney* to require a "special relationship" between the state actor and the plaintiff. *Pinder*, 54 F.3d at 1174–75. *Doe* appears to take a different view and says that "[w]hen the state itself creates the dangerous situation that resulted in a victim's injury, the absence of a custodial relationship may not be dispositive." 795 F.3d at 438 (quoting *Pinder,* 54 F.3d at 1177).

under the state-created danger doctrine, we were unable to find any precedent from South Carolina or the Fourth Circuit establishing this requirement.

Still, we find the trial court appropriately granted the police officers a directed verdict. *See* Rule 220, SCACR ("The appellate court may affirm any ruling, order, decision or judgment upon any ground(s) appearing in the Record on Appeal."). The police did not take Jane Doe into custody, place any restraints on her freedom, or assume the responsibility of caring for her. At best, the testimony shows the officers may have been negligent or grossly negligent, for when the facts are viewed in Jane Doe's favor, the absolute most someone can say is that officers were told, either by Daughter or by the dispatcher, Jane Doe had dementia before they left Jane Doe home alone.

Nothing suggests the North Charleston officers knew a high probability of harm would follow their actions. There is no evidence the police had any reason to think Jane Doe was at risk of harming herself. Indeed, the circumstances and scene suggested Jane Doe had been home alone before Daughter came home intoxicated. The police had no reason to think Jane Doe was incapable of summoning help if she encountered any danger. It is undisputed that Jane Doe responded to the officers' questions and told them where to find Daughter.

We note that, as mentioned above, our analysis is controlled by the fact that negligence and gross negligence are insufficient to move forward on a claim that police action was so wanton that it amounts to a violation of due process. For these reasons, we affirm the trial court's grant of directed verdict on Jane Doe's "state-created danger" theory of liability.

**JURY INSTRUCTION**

Jane Doe also argues the trial court's refusal to re-charge the jury on nominal damages was misleading and "distorted" the standard for liability under section 1983.

The standard of review on this issue is weighted heavily in favor of affirming. "An appellate court will not reverse the trial court's decision regarding jury instructions unless the trial court abused its discretion." *State v. Lemire*, 406 S.C. 558, 565, 753 S.E.2d 247, 251 (Ct. App. 2013) (quoting *Clark v. Cantrell*, 339 S.C. 369, 389, 529 S.E.2d 528, 539 (2000)). Also, "[w]hen the jury requests additional charges, it is sufficient for the [trial] court to charge only the parts of the initial charge which are necessary to answer the jury's request." *The Winthrop Univ. Trs. for the State v.*

*Pickens Roofing & Sheet Metals, Inc.*, 418 S.C. 142, 165, 791 S.E.2d 152, 164 (Ct. App. 2016) (quoting *Rauch v. Zayas*, 284 S.C. 594, 597, 327 S.E.2d 377, 378 (Ct. App. 1985)). "Its failure to charge in greater detail is not error if the details were fully covered in the original charge." *Id.* (quoting *Rauch*, 284 S.C. at 597, 327 S.E.2d at 378).

We cannot say the trial court abused its discretion when it perceived the jury to be confusing the various types of available damages with the elements of a successful 1983 claim. The "injury" in a section 1983 case is the violation of the plaintiff's rights. *See Clark v. Link*, 855 F.2d 156, 161 (4th Cir. 1988) (elements are that the defendant acted under color of state law and deprived plaintiff of a federally-protected right). To this end, the threshold question for liability was whether the circumstances justified the officers' warrantless entry into Jane Doe's home.

The jury's question was an awkwardly worded and confusing one: "For there to be a violation of a civil right, 4th Amendment, the plaintiff must demonstrate through the preponderance of the evidence to be bodily harm or injury or mental i.e. damages[?]" The trial court interpreted the question as asking whether there had to be bodily harm for there to be a legal "injury," and the court believed this indicated the jury was confusing the concepts of an injury and damages. The court was convinced that the jury did not need to hear the entire charge on section 1983 a third time and the best way to answer the jury's question was to repeat the charges on "liability" the court had given twice before.

The trial court could just as well have reached the conclusion the jury was asking about damages and not liability. There is much force and appeal to the reasoning in the dissent. Still, given that we believe both views of the jury's question are possible, we believe the trial court did not abuse its discretion.

Again, we note precedent's instructions that it is sufficient for the trial court to re-charge only that which is necessary to answer the jury's question and that failing to re-charge in greater detail is not necessary when the original charge fully covered the details. *See Winthrop Univ. Trs.*, 418 S.C. at 165, 791 S.E.2d at 164 ("When the jury requests additional charges, it is sufficient for the [trial] court to charge only the parts of the initial charge which are necessary to answer the jury's request." (quoting *Rauch*, 284 S.C. at 597, 327 S.E.2d at 378)); *id.* ("[The trial court's] failure to charge in greater detail is not error if the details were fully covered in the original charge." (quoting *Rauch*, 284 S.C. at 597, 327 S.E.2d at 378)). Jane Doe's arguments on appeal do not challenge the sufficiency of the jury instructions on nominal damages,

but merely that they were not given for a third time, which precedent states is not an error.

**CONCLUSION**

For the foregoing reasons, the trial court's judgment is

**AFFIRMED.**[2]

**LOCKEMY, C.J., concurs.**

**GEATHERS, J., dissenting:** I respectfully depart from the well-written decision reached by the majority. The jury submitted a question seeking to determine whether the plaintiff was required to show an actual injury in order to establish a violation of her civil rights for purposes of her section 1983 claim.[3] To respond to this question, it was necessary to repeat the initial nominal damages charge, which included the language quoted below, because the essence of this charge is the idea that a plaintiff does not have to incur a traditional injury to successfully prosecute a 1983 claim:

> [I]f you return a verdict for the plaintiff on a section 1983 claim but the plaintiff has failed to prove actual or compensatory damages for her claim then you must award nominal damages of one dollar for that claim.
>
> A person whose federal rights were violated is entitled to a recognition of that violation *even if he or she suffered no actual injury*. Nominal damages such as one dollar are designed to acknowledge the depr[i]vation of a federal right even where you find no actual injury occurred.

(emphasis added). In other words, the violation of a right is itself considered an injury. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021) ("Because 'every violation [of a right] imports damage,' nominal damages can redress [the plaintiff's] injury even if he cannot or chooses not to quantify that harm in economic terms." (second alteration added) (citation omitted) (quoting *Webb v. Portland Mfg. Co.*, 29

---

[2] We decide this case without oral argument pursuant to Rule 215, SCACR.
[3] Accompanying this question was the jury's request to obtain a copy of the language in section 1983, which the circuit court denied.

F. Cas. 506, 509 (C.C.D. Me. 1838) (No. 17,322))). In the absence of this key language, the circuit court's re-charge on the claim's general elements, especially proximate cause, likely confused the jury or gave the jury the impression that a traditional injury is required.

I am not suggesting that the circuit court always has to repeat a charge in its entirety when responding to a jury's question. However, in the instant matter, the court included the nominal damages language in the first two charges on the requirements for a section 1983 claim and omitted the nominal damages language in the third and final charge in response to the jury's question concerning an actual injury. Under these circumstances, I believe the omission of this key language de-emphasized it or removed it from the jury's consideration when, in fact, it was the only language that would have directly responded to the jury's question. *See Winthrop Univ. Trs. for the State v. Pickens Roofing & Sheet Metals, Inc.*, 418 S.C. 142, 165, 791 S.E.2d 152, 164 (Ct. App. 2016) ("When the jury requests additional charges, it is sufficient for the court to charge only the parts of the initial charge [that] are *necessary to answer the jury's request*." (emphasis added) (quoting *Rauch v. Zayas*, 284 S.C. 594, 597, 327 S.E.2d 377, 378 (Ct. App. 1985)).

In sum, the denial of counsel's request to re-charge the jury on nominal damages was based on the erroneous conclusions that (1) the nominal damages charge was unnecessary to respond to the jury's question and (2) a re-charge on the claim's general elements, in the absence of the nominal damages language, would be more responsive. *See id.* Because the circuit court's ruling was based on errors of law, I would reverse and remand for a new trial. *See First Union Nat. Bank v. First Citizens Bank & Tr. Co. of S.C.*, 346 S.C. 462, 466, 551 S.E.2d 301, 303 (Ct. App. 2001) ("An abuse of discretion can occur where the trial court's ruling is based on an error of law."); *see also Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 601, 553 S.E.2d 110, 121 (2001) ("An abuse of discretion occurs where the trial court is controlled by an error of law or where the trial court's order is based on factual conclusions without evidentiary support.").